ATKINSON BACOT ET AL. *v.* ELLIS M. VARNADO ET AL.

[47 South., 113.]

1. MORTGAGE. *After-acquired property. Homestead.*

    A husband and wife may execute a valid mortgage on property to be thereafter acquired, and such property, although purchased for and used as their homestead, will not be exempt from its lien.

2. SAME. *Chancery courts. Land in another state.*

    The chancery court should not adjudicate the validity of a mortgage on lands in another state, although it has jurisdiction of the parties and enforces a concurrent lien on property in this state to compel payment of the mortgage debt.

FROM the chancery court of Pike county.

HON. J. S. HICKS, Chancellor.

Bacot and others, copartners doing business under the firm name of Atkinson Bacot Co., appellants, were complainants in the court below; Varnado and others, appellees, were defendants there. From a decree awarding complainants relief in part they appealed to the supreme court and the defendants prosecuted a cross-appeal.

On the 28th day of April, 1892, Ellis M. Varnado and Anna B. Varnado, his wife, being indebted to complainants in the sum of $746.64, executed their promissory note for said sum, and to secure same executed a mortgage on certain lands situated in Louisiana and a certain other mortgage on property in Mississippi. The Mississippi and Louisiana mortgages were executed at the same time, the note secured by them being due and payable on January 1, 1893. The Mississippi deed of April 28, 1892, after describing specifically the property included within its provisions, also contained the following " and the grantors further convey any increase of property, real or

personal, that may be by them or either of them hereafter acquired by purchase or otherwise, the title to which they warrant and agree forever to defend," etc.   This deed was signed by the husband and wife, and in every respect duly executed.   On the 6th of December, 1892, Anna B. Varnado, the wife, acquired by purchase a house and lot in the town of Osyka, the value of which is less than the value of a homestead as allowed by the exemption laws, upon which Charles Varnado held a purchase money lien for a balance of $150.   The debt secured by the first deed on Mississippi property maturing and being unpaid, a second mortgage deed on Mississippi property was executed, in which Ellis M. Varnado and his wife, Anna B. Varnado, and Samuel R. Farrell all joined.   This second deed was made for the purpose of securing certain indebtedness due by all the parties to Atkinson Bacot Co., equaling $2,-250.81.   It was executed on the 13th day of July, 1894, and the debt secured by it became due and payable on August 1, 1895.   This second deed included the amount due under the first one, to-wit, $746.64, and stipulated that it was taken as additional security merely.   This second mortgage deed contains the same provision as to after-acquired property found in the first one, and both husband and wife duly executed it.

The object of the suit was to foreclose the Mississippi mortgages not only by sale of the property specifically described in them, but as well on after-acquired property; the bill designating the house and lot in Osyka particularly as being liable under the mortgages as after-acquired property.   The Louisiana mortgage was mentioned in the bill as a part of the transactions between the parties, and the prayer as to it was, not for a sale of the lands, but for a decree adjudging it valid.

The defendants answered the bill and admitted the acquisition of the house and lot, but claimed that it is not subject to the operation of the mortgage deed because it was purchased for and is used and occupied by them as a homestead.

The defendants alleged that the sum of $2,250.81 was made

up of usurious interest, and make their answer a cross-bill, praying that the account may be purged of usury and that they be required to pay only such sum as may be found justly due. The court below held that the contract was usurious, eliminated from it the usurious charges, gave a decree for complainants in the sum of $1,340.71, and adjudged a lien on certain property owned by the defendants at the time of the execution of the mortgage, and other property which had subsequently been acquired by them, but declined to subject the Osyka lots to the payment of the mortgage, on the idea that defendants, Varnado and wife, were entitled to have the same exempt to them as a homestead. The final decree recognized the Louisiana mortgage as valid to secure the sum found to be due the complainants, but did not order a sale of the Louisiana land.

*McWillie & Thompson,* for appellants and cross-appellees.

The facts of the case as shown by the bill are these: On April 28, 1902, Ellis M. Varnado and his wife, defendants, executed and delivered to a partnership then doing business at Osyka their joint and several promissory note for $746.64 with ten per centum interest from January 1, 1893, the date of its maturity. At said date Varnado and wife executed a mortgage on lands in Tangipahoa Parish, Louisiana, and a deed of trust on specific personal property then owned by them located in Mississippi to secure said note, and by the deed of trust they conveyed any increase of property, real or personal, that they might thereafter acquire by purchase or otherwise, the title to which after-acquired property they agreed to warrant and forever defend. . The note secured by the Louisiana mortgage and the Mississippi deed of trust was assigned to the complainant by the payee therein on January 20, 1893.

After the execution of the deed of trust the defendant, Anna B. Varnado, the wife of E. M. Varnado, acquired a piece of real estate situated in Osyka specifically described in the bill.

Afterwards on July 13, 1894, the transferred note being

unpaid, the complainant and the defendants Varnado and wife and S. R. Farrell had an accounting when it was ascertained that the three defendants named were indebted to complainant, embracing the sum due on the first note, in the aggregate sum of $2,250.81, and they then executed and delivered to complainant a joint and several promissory note for that sum, payable to complainant, due August 1, 1895, and at the same time the said three defendants executed a deed of trust to secure the $2,250.81 note. This deed of trust by its recitals recognized the validity of the first note for $746.64, the Louisiana mortgage and the Mississippi deed of trust theretofore given to secure it and by said deed of trust said defendants conveyed other specific personal property as additional security for the debt evidenced by the first note and as security for that part of the second note which was not evidenced by the first one, and also conveyed a leasehold interest in a small piece of real estate and any increase of property real or personal that the grantors or either of them might thereafter acquire by purchase or otherwise, they agreeing to warrant and defend the title to such after-acquired property.

The prayer of the bill was for an adjudication of the sum due, a decree adjudging it a lien on all the property including the Louisiana lands, but seeking a sale only of the Mississippi property, real and personal, including the town lots acquired by Mrs. Varnado after the execution of the first deed of trust.

The answer of Varnado and wife, after some ineffectual efforts to deny the contents of the exhibits to the bill, raised the question of the right of the complainant to have its mortgage adjudged to be a lien upon the Louisiana lands and pleads the statute of limitations thereto; it admits the acquisition of the Osyka lots by Mrs. Varnado after the execution of the first deed in trust, but claims that these lots are not subject thereto as after-acquired property because they constitute her homestead; denies the payment of the mortgage given on the

lots by Mr. and Mrs. Varnado to their son Charles, and sets up usury in complainant's debt.

The complainant was entitled to a decree condemning the Osyka lots to be sold for the sum due on its debt. That the lots were acquired by Mrs. Varnado after the execution of the first deed of trust is admitted. After-acquired property can be conveyed or mortgaged to secure a debt and the conveyance or mortgage is perfectly valid as between the parties, although invalid as to third parties. *White* v. *Thomas,* 52 Miss., 49; *Marx* v. *Davis,* 55 Miss., 376; *Williams* v. *Crook,* 63 Miss., 9; *Sillers* v. *Lester,* 48 Miss., 513; *Mississippi, etc., Co.* v. *Railroad,* 58 Miss., 896; *Fidelity, etc., Co.* v. *Sturlevant,* 86 Miss., 509; s.c., 38 South., 783; *Packwood* v. *Atkinson, etc., Co.,* 79 Miss., 646; s.c., 31 South., 337.

It is true that Charles Varnado, one of the defendants, had a mortgage on these lots given by his father and mother after they acquired them, but there was only $150 due him thereon according to his own testimony, and to put the case strongest against complainant, the lots should have been condemned for sale to satisfy its debts subject to Charles' mortgage.

The court below went off on the idea that the complainant's mortgage could not be enforced upon the after-acquired lots because Mrs. Varnado claims to have purchased them for a homestead and that she and her husband went upon the land and are now and have been since its purchase occupying it as their homestead. Homestead rights are purely statutory. Our statute applicable to the case is Code 1892, § 1971; Code 1906, § 2147, and it is as follows:

"2147. (1971) EXEMPTIONS IN CITIES, TOWNS AND VILLAGES. Every citizen of this state, male or female, being a householder, and having a family residing in any city, town or village, shall be entitled to hold, exempt from seizure or sale under execution or attachment, the land and buildings owned and occupied as a resident by such person, not to exceed in value, save as hereinafter provided, $3,000, and personal prop-

erty, to be selected by him, not to exceed in value $250, or the articles specified as exempt to the head of a family."

There is nothing in this statute empowering a mortgagor to hold his homestead exempt from his mortgage. If he could hold it exempt from his mortgage he could hold it exempt from his deed of conveyance; in fact, a mortgage is a deed of conveyance coupled with a right of redemption. It needs no citation of authority to show that we are correct in our position on this point.

The cases, presenting questions most akin to the one involved that we have been able to find have arisen on the section of the United States Homestead Land Act providing that the land should not be liable for debts incurred by the homesteader prior to the issuance of the patent. A large majority of the cases hold that the statute, although broad enough in its terms to embrace debts secured by the homesteader's mortgage on the premises, does not protect him from his own conveyance, absolute or conditional, and that he is estopped by his mortgage deed from claiming that the land is not subject to the debt secured by it. See *Stark* v. *Morgan* (Kansas), 85 Pac., 567; s.c., 6 L. R. A. (N. S.), and the note to the case in L. R. A.

If after-acquired property be subject to a mortgage under an express statute exempting it from the mortgagor's debts surely it is liable in the absence of such a statute.

This court went fully into the subject and decided that the federal statute seeking to prohibit alienations had reference only to absolute sales and that all contracts in reference to homesteads not in violation of express statutes or fundamental principles of public policy, although made before the issuance of the patent may be enforced after its issuance and that such contracts are within the "efficacious reach of the doctrine of estoppel." *Orrell* v. *Bay, etc., Co.,* 83 Miss., 800; s.c., 36 South., 561.

We have no statute prohibiting the mortgaging of after-ac-

quired property, real or personal; on the contrary this court has often decided that such mortgages are good between the parties; nor have we any statute authorizing the claim of a homestead as exempt from a mortgage which the debtor and owner has himself placed upon it.    It follows therefore that the fourth assignment of error is well taken.

Jones, in the second volume of his work on Mortgages, sec. 1444, tells us that aside from statutory requirements an action to enforce a mortgage is not local but transitory and a bill may be brought wherever there is jurisdiction of the parties; that the title to land cannot be investigated in such cases; that the courts of England regard the right to redeem as a mere personal right and not as an estate in the proper technical legal sense and on this ground they take jurisdiction of the foreclosure of land situate in the colonies when they have jurisdiction of the parties. A court of chancery acting primarily *in personam* and not merely *in rem* may by virtue of its jurisdiction of the parties make a decree respecting property situate out of its jurisdiction and may enforce the decree by process against the defendant. *Paget* v. *Ede,* L. R. 18 Eq., 118.

Courts of equity in England and in this country have not hesitated, having jurisdiction of the parties, to order the specific performance of contracts and the execution of deeds conveying lands situated beyond the jurisdiction of the courts, and parties have been punished for contempt of English courts of equity because of a failure to comply with its decree directing the execution of deeds conveying lands in India.

The chancery court of Pike county unquestionably had jurisdiction of the parties to the mortgage on the Louisiana lands; it had jurisdiction to adjudge the sum due upon the mortgage debt, and surely it had jurisdiction further to decree that it was secured by the mortgage on those lands, a description of which was set out in the Louisiana mortgage exhibited with the bill. It did not order a sale of them.

*J. B. Sternberger,* for appellees, and cross-appellants Varnado and wife.

The Mississippi decisions cited by counsel for appellant in support of their contention that complainants, appellants here, were entitled to a decree condemning the homestead of the Varnados in Osyka to be sold under the after-acquired property clause of the trust deed are not, I submit, at all in point. These cases deal with non-exempt personal property which is either the natural increase of the property — as the foal of a mare — or other accretions or additions to the same. Nor is there any analogy between the cases cited arising under the United States Homestead Laws and the case at bar. The gist of these decisions is that a mortgage of the homestead, a sale of trees, or a lease of same for turpentine purposes, prior to the issuance of the patent is not an " alienation " within the meaning of the statute.

It has been repeatedly held in other states that the debtor's contract waiving his exemptions in advance are void; this has also been held by this court as to personal property in *Teague* v. *Weeks,* 89 Miss., 360; 7 Am. & Eng. Enc. L. (1st ed.) 141. In Illinois it seems that a waiver of the homestead exemption must be in writing, with express release, made, signed and acknowledged by husband and wife. 9 Am. & Eng. Ency. L. (1st ed.) 493.

If the after-acquired property clause of the trust deed applies to a homestead subsequently acquired, it applies to everything so acquired that goes in or upon it — even to the last feather-bed or skillet. By such means the improvident debtor may pauperize himself and, worst of all, his dependent family. If in this state people of that unfortunate and somewhat numerous class are to do this thing they ought at least to do it knowingly and deliberately. This clause can certainly rise to no higher dignity than an express waiver of personal exemptions in a written contract, which was held void by this court, as we

have already seen. The reasons for holding it void where the home is at stake are still more cogent.

Section 2147, Code, is inapplicable to the precise question raised here. That section simply fixes the value of the urban homestead and exempts it from levy or attachment. Sections 2159 and 2161, that deal with the mode of alienation and incumbering are more directly in point. These statutes, by their plain and express terms,. deal with the present accrued homestead rights of aliens and mortgagors owned by them at the very time of the contemplated alienation or incumbrance. By analogy at least see *Cummings* v. *Bussy,* 62 Miss., 195. The law, in other words regards the act of alienating or incumbering as of such vital importance and solemnity not only to the family but to the state as to require that the act shall be performed by both spouses with a full knowledge and appreciation of its meaning. This is the plain and inescapable public policy to be subserved.

*Price & Whitfield,* for appellee, Samuel R. Ferrell.

Argued orally by *R. H. Thompson,* for appellant.

WHITFIELD, C. J., delivered the opinion of the court.

The general doctrine that a valid mortgage may be executed to pass after-acquired property is too well settled to require citation of authorities. The precise question presented for decision on this record is simply this: Can husband and wife execute a mortgage on an after-acquired homestead, which shall be good to bind that after-acquired homestead when it comes into existence? Some things are perfectly clear:

First. A man may execute a mortgage, good at law or in equity, on what he now actually owns.

Second. A man may execute a mortgage, good at law or in equity, on what he does not now own actually, but what he potentially owns, as a crop to be grown in fifteen months. *Everman*

v. *Robb,* 52 Miss., 653; 24 Am. Rep., 682; *White* v. *Thomas,* 52 Miss., 49; *Stadeker* v. *Loeb,* 67 Miss., 200; 6 South., 687. Within this class of cases, where the mortgagor only potentially owns the property granted in the mortgage, fall crops not yet planted, wool then on the backs of the sheep, freight on cargoes not yet earned by ships, etc. These are familiar instances.

Third. It is equally elementary that a man may execute a mortgage, not valid at law, but valid in equity, on property that he does not then own, either actually or potentially, but which he may afterwards acquire. In all such cases the principle is that such an instrument is treated as a contract to convey the after-acquired property, when the acquisition takes place in the future. Nothing can possibly be added to the clearness and force with which this whole subject is treated in 2 *White & Tudor's Leading Cases in Equity,* pt. 2, p. 1605 *et seq.* A mere expectancy or possibility or hope of something to come, as the hope that the grantor may acquire property by devise from one still living and who has not made his will, are good in equity within this principle, though utterly void at law. In *Wilson's Estate,* 2 White & Tudor's L. C., pt. 2, p. 325, a conveyance by a woman, in contemplation of marriage, of all the estate which she then had, or should thereafter acquire for her separate use during life, and after her death to her children, was held to confer an equitable title to property which was subsequently bequeathed to her by an uncle. The great Chief Justice Gibson of Pennsylvania delivered the opinion in that case, and in the course of it said: " Indeed, it is no more than the familiar principle that he who executes a conveyance on valuable consideration, purporting to pass a title before it is in him, will be bound to make it good whenever he acquires it." The principle is stated in many ways, and is illustrated by an overwhelming array of authorities, from which we select one or two. In the note referred to, at page 1606, *supra,* it is said: " It has notwithstanding been held that such possibilities, and even the expectancy of one who has no present claim of any kind, may be

assigned in equity, or rather that a court of equity will interpret such an assignment as a contract to convey when the estate or interest vests, which may be enforced specifically, if shown to have been made in good faith and for a valuable consideration." Judge Story stated it this way in *Mitchell* v. *Winslow,* 2 Story, 631, Fed. Cas. No. 9, 673: " The authorities establish the proposition wherever the parties by their contract intended to create a positive lien or charge, either upon real or personal property, whether it is then *in esse* or not, it attaches in equity as a lien or charge upon the particular property, as soon as the assignor or contractor acquires a title thereto, against the latter and all persons asserting a claim thereto under him, either voluntarily or with notice, or in bankruptcy."

Perhaps the clearest and best statement anywhere to be found is that of the Lord Chancellor in the House of Lords, in *Holroyd* v. *Marshall,* 10 House of Lords, 191, which is given in full because of its great clearness: " It is quite true that a deed which professes to convey property which is not in existence at the time is a conveyance void at law, simply because there is nothing to convey. So in equity a contract which engages to transfer property which is not in existence cannot operate as an immediate alienation merely because there is nothing to transfer. But if a vendor or mortgagor agrees to sell or mortgage property, real or personal, of which he is not possessed at the time, and he receives the consideration for the contract, and afterwards becomes possessed of property answering the description in the contract, there is no doubt that a court of equity would compel him to perform the contract, and that the contract would, in equity, transfer the beneficial interest to the mortgagee or purchaser immediately on the property being acquired. This, of course, assumes that the supposed contract is one of that class of which a court of equity would decree the specific performance. If it be so, then immediately on the acquisition of the property described the vendor or mortgagor would hold it in trust for the purchaser or mortgagee, according to the terms of the contract;

for if a contract be in other respects good and fit to be performed, and the consideration has been received, incapacity to perform it at the time of its execution will be no answer when the means of doing so are afterwards obtained."

The doctrine is also stated with very marked clearness by Mr. Pomeroy in his work on Equity Jurisprudence (Student's Ed.), § 1236, and also sections 1285–1291. In section 1288 Mr. Pomeroy says: " In other words, the doctrine of equitable assignment of property to be acquired in future is much broader than the jurisdiction to compel the specific performance of contracts. In truth, although a sale or mortgage of property to be acquired in future does not operate as an immediate alienation at law, it operates as an equitable assignment of the present possibility, which changes into an assignment of the equitable ownership as soon as the property is acquired by the vendor or mortgagor; and because this ownership thus transferred to the assignee is equitable, and not legal, the jurisdiction by which the right of the assignee is enforced, and is turned into a legal property, accompanied by the possession, must be exclusively equitable, a court of law has no jurisdiction to enforce a right which is purely equitable. This, in my opinion, is the only correct and sufficient rationale of one of the most distinctively equitable doctrines in the whole scope of equity jurisprudence." These citations are abundantly sufficient to correctly and clearly and accurately state the true principle upon which the doctrine rests in equity that a mortgage of after-acquired property, or of any expectancy or possibility, is good in equity to pass that future interest, whenever it shall be acquired, by virtue of the mortgage as between the parties. It will, of course, be understood that we are not speaking here of a case in which the rights of any creditors or any third parties whatsoever are involved. The question is one arising simply between the original parties to the instruments.

All three of the propositions which we have thus far stated are elementary. There is no room for any controversy as to the

accuracy of each one of these statements, nor of the accuracy of the fourth proposition, which is this: That husband and wife may execute a valid mortgage on a homestead which they own presently at the time of the execution of the mortgage. The manifest and plain logic of the case makes just as clear the fifth proposition, which is that husband and wife may execute a valid mortgage on after-acquired property, even if that after-acquired property, when acquired, shall be used or appropriated by them as a homestead.

Counsel for appellee give as their reason for denying the power of husband and wife to do this, as between the original parties, that public policy is somehow or other infringed. There is no public policy as to homesteads, except that which the statute has declared; and that public policy, so far as contracts are concerned, like a mortgage upon a homestead, is confined exclusively to providing that such instruments shall not be valid unless joined in by the wife in the manner marked out by the law. This mortgage, in this case, was properly executed by husband and wife for a valuable consideration in the manner provided by law, and, that done, there is no element of public policy with regard to homesteads in this case that can be said to have been infringed. It was perfectly competent for the husband and wife to execute the mortgage, or not to execute it. They had perfect liberty and freedom to so contract or not — to execute the mortgage or not. There is nothing on earth in it, except whether they did desire to make that sort of contract, and did make it, and did make it in the manner marked out by the law. Whenever it is conceded, as, of course, it must be, that husband and wife may execute a valid mortgage in *præsenti* on a homestead which they now own, it must follow inexorably that they may also execute a mortgage on a homestead which they may thereafter acquire. Public policy as to homesteads is no more infringed by a mortgage on a homestead to be acquired than it is by a mortgage on a homestead then owned at the time of the execution of the mortgage. There is nothing

but the mere element of time — the then and the thereafter — involved in any such case. The principle is the same, the power to so contract — that is to say, to execute a mortgage on the homestead — is the same, whether such mortgage be .executed to bind a homestead then in existence or one thereafter to be acquired. May not husband and wife jointly contract to convey their homestead in possession at a future day, on terms to be then complied with? There questions must be answered in the affirmative, and, if they may, why does not a conveyance of a homestead to be acquired in the future by their joint act bind them? Their *jus disponendi* is unlimited by statute. Why place a limitation upon it which serves no good purpose, and which may effect two very evil purposes: First, which may disable them to advantage themselves by getting through such a mortgage the means whereon to live, etc., and which, in the second place, if they are disposed to perpetrate frauds, puts it in their power to so perpetrate frauds by investing the money secured on such mortgage in a homestead to be acquired, to the injury of their grantee — such mortgage? In short, how can the proposition be escaped that to deny the right of the husband and wife, by mortgage properly executed, to convey a homestead to be acquired in the future, is to deny, simply and directly, their right to contract — their freedom to contract? How can it be said that husband and wife have perfect power, by contract, to convey all other property, property of every other kind than a homestead, such property to be acquired in the future, and yet they have no power so to convey a homestead to be acquired in the future? How can any rational distinction in the law be drawn between merely the two kinds of property?

It is not a question of the kind of property which may be bound under an after-acquired clause in a mortgage. No such distinction as that will stand the test of logic. It is a question, merely and simply, of whether a mortgage of any property to be acquired in the future is good in equity between the parties.

The only distinction which the statute mentions is that, when it is a homestead that is to be bound as after-acquired property, the mortgage must be joined in by the wife in the form prescribed by law, and it is only with respect to this veto power that the wife has over the conveyance of an after-acquired homestead that public policy has any room for play at all. When, therefore, the wife has, by solemn contract duly executed in the form required by law, joined the husband in a conveyance of a homestead to be acquired in the future, what possible ground is there for saying that public policy as affecting homesteads is infringed, or for drawing any distinction between a homestead and any other sort of property? This distinction is not as between different kinds of property. The distinction is merely as to the mode in which a conveyance conveying a homestead is to be executed, and that mode has been complied with in this case. We repeat, and with that close our view of the case, that whenever it is conceded that the husband and wife may execute a mortgage on a homestead they now own — in other words, that they have power so to contract away the homestead — it must inevitably follow, so far as the power to make such a contract is concerned, conforming to the statute as to the mode in which the instrument is executed, they have the power to contract away a homestead to be acquired in the future. It is a mere matter of right to so contract; the only difference being that if it be a homestead the wife must join in the manner the law marks out. How can it be rationally contended that all property except a homestead may be bound by a mortgage carrying after-acquired property in equity, and yet that this single kind of property, homesteads, may not be by contract so conveyed? How can it possibly be that the time of the execution of a present mortgage and a future mortgage should alter the principle of the power to mortgage the homestead?

Finally, it is palpable that counsel have fallen into a manifest error with respect to public policy affecting homesteads by misapplying the doctrine of *Trotter* v. *Dobbs,* 38 Miss., 198,

and other like cases in this state, to this the case of a contract. The books are full of statements with respect to the policy of the law to protect homesteads, and to encourage the establishment of homesteads, and to shelter homesteads from sales under execution or attachment. Sales under execution or attachment are judicial dispositions of the homestead; dispositions *in invitum;* dispositions or sales in respect to which the husband and wife are not consulted and have no say whatever. That is one class of cases; and it is that class of cases alone, in respect to which all the declarations about the sanctity of homesteads, and the necessity for encouraging and protesting homesteads, relate. They have no sort of application to that wholly different class of cases, like the one we are discussing, in which the husband and wife have by their own voluntary, solemn contract, founded on a valuable consideration, bargained away their homestead. The distinction is so plain that we find it impossible to make it clearer by further discussion.

The claim of Charles Varnado for $150 and interest, purchase money of the land, is, of course good on the facts of this case against the mortgage. The result is that the decree of the court below on direct appeal is reversed in so far only as it denied the liability under the mortgage of the after-acquired homestead. Such homestead will, as. we hold, pass under said mortgage, subject to the claim of $150 just specified.

Judge CALHOON concurs in this opinion, but desires to express strongly his view that the legislature should pass an act making any mortgage of an after-acquired homestead void, and in this expression I myself heartly concur.

On the cross-appeal the decree is also reversed. It is for the Louisiana courts to adjudicate as to lieu and sale of lands in Louisiana. In all other respects the decree is *affirmed.*

MAYES, J., delivered the following dissenting opinion.

I cannot agree with the court in its announcement of the law in this case. The only point of difference is upon the question

of whether a husband and wife, by uniting in giving a deed in trust containing an after-acquired property clause, can prospectively so waive their exemption as to defeat the future acquisition of a homestead during the life of the mortgage? In discussing this question I deem it unnecessary to enter upon any general discussion as to the validity of the after-acquired property clause frequently found in contracts of the character now under review. It is enough to say that these clauses have been frequently upheld in proper cases by the courts of almost every state. Our own court, however, has made it plain that these clauses have their limitations. In the case of *Fidelity, etc., Co.* v. *Sturtevant Co.,* 85 Miss., 509, 520; South. 783, 784; 109 Am. St. Rep. 716, this court said: " We do not wish to be understood as having committed ourselves to the broad doctrine that a mortgage of chattels thereafter to be acquired is unlimited, and in all circumstances to be sustained." Again the court says: " A careful study of the cases will disclose: (1) That in each instance the contract had reference to some particular designated property, which may, in the ordinary course of things and with reasonable certainty, come into existence. (2) The assignor or mortgagor must, at the date of the contract, have an actual interest in or concerning the subject. There must be an interest *in præsenti,* of which the future acquisition is the product, or in such wise incident to or connected with it, constituting a tangible and substantial predicate of a contract." It is thus seen, from the authorities in this state, that where a mortgage is given on certain designated property then existing, having in it a clause including property to be thereafter acquired by the mortgagor, this court has clearly indicated that such clauses have their limitations. The provision in this trust deed is not in express terms a waiver by the husband and wife of the right to acquire exemption. If this were the case, we hardly think it would be contended that such a stipulation would have any validity; but the effect of the deed in trust, if it is upheld, when sought to be enforced against a homestead subsequently acquired,

makes it a waiver.    The mortgage as to the after-acquired prop-
erty is executory, and is a mortgage of a mere possibility.    In
the case of *Teague* v. *Weeks,* 89 Miss., 360; 42 South. 172, this
court held that an executory contract of a debtor to waive ex-
emptions allowed by law was void as against public policy.    In
section 153, vol. 1, Jones on Mortgages, it is said: "A con-
veyance of what does not exist does not operate as a present
transfer in equity any more than it does at law.    The difference
is merely that at law the conveyance, having nothing to operate
upon, is void; while in equity what is in form a conveyance
operates by way of present contract, to take effect and attach to
the subject of it as soon as it comes into being.    The agreement
to convey then ripens into an actual transfer.    Equity considers
that as done which the mortgagor has distinctly agreed to do,
and is in consequence bound to do."

The only validity which attaches to this kind of conveyance
is derived from the equity courts.    But, in order to enforce
future-acquired property contracts in mortgages, equity will not
act in cases where it destroys the public policy of the state.    The
equity of the public in the preservation of so necessary a policy
of the state as that of the right of a citizen to acquire the ex-
emption allowed by law is stronger and higher than can possibly
be in the equity of a creditor to contract away the right from the
debtor.    When certain formalities have been complied with,
the homestead may be sold or incumbered.    While the exempt
property may be sold or incumbered, and its natural increase
mortgaged, when it is actually owned, we have found no au-
thority which holds that the debtor may preclude himself by
any sort of an executory contract from the right to acquire a
homestead.    Such an executory contract is void, both in law and
in equity.    In section 354, vol. 1, Page on Contracts, it is held
that "a covenant in a contract whereby the promisor agrees in
advance to waive his right of exemption in his property is void
in most jurisdictions, on the theory that the statute is enacted
for the protection of necessitous debtors, and to allow them to

contract away their right in advance would be to defeat the purpose of the statute." In Greenhood on Public Policy, p. 497, it is said, if the waiver of exemptions is to prevail, " a few words contained in any note or obligation would operate to change the law between those parties, and so far disappoint the intentions of the legislature. If effect shall be given to such provisions, it is likely that they will be generally inserted in obligations for smaller demands, and in that way the policy of the law will be completely overthrown. Every honest man who contracts a debt expects to pay it, and believes he will be able to do so without having his property sold on execution. No one worthy to be trusted would therefore be apt to object to a clause subjecting all his property to levy on execution in case of nonpayment. It was against the consequences of this over-confidence, and the readiness of men to make contracts which may deprive them and their families of articles indispensable to their comfort, that the legislature has undertaken to interpose. . . . The law seeks to mitigate the consequences of men's thoughtlessness and improvidence, and it does not allow its public policy to be evaded by any language which may be inserted in the contract."

The reason of the law applies with just as much force to the waiver of the prospective right to acquire a homestead by virtue of the future-acquired property clause in a deed in trust as it does to the waiver of exemption by the debtor from execution. In truth, there is more reason to apply this rule to the future-acquired clause contained in trust deeds, for the reason that, if it is upheld, it is not only a waiver of exemption, but it is a waiver before the debtor ever acquired the property on which the waiver is to operate. The limitations on the rule as to the upholding of contracts in reference to future-acquired property should not be relaxed, but should be more rigid. No rule of law could be announced which would be more inimical to the policy of the exemption laws, and open wider the door to oppression, than to hold that a party taking a mortgage could in-

corporate in it an after-acquired clause to operate prospectively and defeat the right of a debtor to acquire future exemptions. To uphold this stipulation in a deed in trust, when it is sought to take away from a debtor the right to acquire a homestead, necessarily makes it apply to all after-acquired property, irrespective of its character, and under it a debtor's home may be stripped of all that is ·in it. Whatever this contract may be called, its effect cannot be escaped, and it is exactly the same in its effect as if the wife and husband had executed this mortgage on certain specific property and additionally waived their right to acquire any property in the future which might be exempt under the law. They have not said this in express words, but the effect is to say this. In the case of *Moran* v. *Clark,* 30 W. Va., 358 ; 4 S. E. 303 ; 8 Am. St. Rep., 66, are to be found many authorities on this subject, all of which hold that a. contract waiving the right to claim exemptions is a nullity.

I rest my view of this case on the broad ground that a clause· of this sort in a deed in trust cannot operate to defeat the acquisition of future exemptions, by the mortgagor. If a mortgagor own a homestead or other exempt property actually in existence at the time, he may mortgage that property, though it be exempt, and the increase of that property. He may mortgage his homestead and the crops to be grown on his homestead, because these things have a potential existence; but he may not in his mortgage convey away prospectively his right to acquire a homestead. No creditor ever took a security from his debtor, relying on property to be after acquired as sole security. Few debts would be made if the creditor had to rely for his security on the future possible acquisitions of a debtor. The creditor relies on more tangible security. This exact case has not been before decided by this court; but all the authorities unanimously hold that a debtor cannot waive his exemption right, and that is what this contract does.

The authorities quoted in the opinion in chief have no application to this case. There was no question of exemption discussed there, or thought of.