BAKER *v.* BUILDING & LOAN ASS'N OF JACKSON *et al.*

(Division A. Jan. 29, 1934.)

[152 So. 288. No. 30916.]

. . ."

**Lester Clark** and **F. M. Morris,** both of Hattiesburg, for appellant.

810

Sullivan & Sullivan, of Hattiesburg, for appellees.

· Argued orally by **F. M. Morris**, for appellant, and by **W. C. Sullivan**, for appellees.

**McGowen, J.**, delivered the opinion of the court.

W. H. Baker, appellant, exhibited his bill for injunction in the chancery court of Forrest county against the Jackson Building & Loan Association and Sullivan, trustee, seeking to enjoin foreclosure of a deed of trust, for what was alleged to be an excessive amount.

All the material allegations of the bill were denied in the answer. The court heard the evidence, and entered a decree dissolving the injunction and directing that the money tendered into court as the correct amount due by W. A. Baker be paid by the clerk of the court to the appellee, and an appeal therefrom is prosecuted to this court by W. H. Baker.

The essential facts are these: On June 12, 1927, B. H. Baker, a kinsman of W. A. Baker, executed a deed of trust on certain real estate on Forrest street in Hattiesburg, his homestead, in favor of the Jackson Building & Loan Association to secure a particularly described debt of two thousand dollars payable in monthly installments.

On October 8, 1928, B. H. Baker executed a deed of trust on his Main street property in Hattiesburg, to the Jackson Building & Loan Association to secure a described debt of five hundred dollars payable in monthly installments. Subsequently, said B. H. Baker, having reduced the loan on his Forrest street property to one thousand three hundred dollars, procured an additional loan and executed a new deed of trust on said Forrest street property to secure two thousand dollars, and the deed of trust executed on June 12, 1927, was canceled. By this third transaction, B. H. Baker secured seven hundred dollars new money. All these deeds of trust were properly acknowledged and duly recorded.

On May 5, 1932, the second deed of trust on the Forrest street property was foreclosed; the property sold for less than the amount of the debt, and a judgment at law was obtained against B. H. Baker and wife for six hundred twenty-four dollars and thirty cents, the balance due thereon.

On May 1, 1932, B. H. Baker and wife executed a deed conveying the Main street property to W. A. Baker, for a recited consideration of two hundred twenty-five dollars, which, as shown by the evidence, was paid by W. A. Baker's assumption of the balance due by B. H. Baker to the building and loan association amounting to about two hundred seven dollars and ninety-nine cents, and the balance in cash.

On the trial of the case, W. A. Baker, the appellant, did not testify.

There was an effort to establish an estoppel by the evidence of Clark, attorney for W. A. Baker, as to a statement made by Sullivan, trustee, and attorney for the building and loan association.

A critical examination of the evidence shows that Clark, perhaps, testified to a statement by Sullivan, which the latter positively denied.

We think it proper to state further that the appellant, W. A. Baker, alleged in his bill that he owed the Jackson Building & Loan Association two hundred seven dollars and ninety-nine cents; that he tendered this amount into court accompanying his bill, after tendering it to Sullivan as being the amount of his indebtedness to the appellee for all purposes.

The sharp issue in the court below was whether or not the Jackson Building & Loan Association was entitled to a claim under the deed of trust on the Main street property for the balance due on the Forrest street property. All the deeds of trust are said to contain the same language, differing only as to dates and amounts. In the deed of trust here involved on the main street property, by which it is sought to hold as security said property for the balance due on the Forrest street property, after reciting an indebtedness of five hundred dollars, it is stated: ''And, whereas, we are anxious to secure the payment of said indebtedness when due in monthly installments and also any further sum which may be advanced and not specifically mentioned herein and any other sum or sums that we may owe said The Building & Loan Association of Jackson, Mississippi, or holder of said notes . . . But this conveyance is in trust; should we pay all indebtedness herein secured with interest and monthly installments . . . It is distinctly understood that this deed of trust shall be a continuing security for said indebtedness and any renewal or extension thereof or further advances or other indebtedness however evidenced . . .'' It is further provided that ''should default be made in the payment of any of the installments of principal or interest herein for future advances or other indebtedness hereby secured when due,'' then all the indebtedness should be accelerated.

After providing that the property might be sold by the trustee, there occurs the following provisions:

"Out of the proceeds of such sale or sales, when made, will first be paid the cost and expenses of executing this trust, including a trustee's fee of five per centum of the amount realized by the sale and the attorney's fee provided in said note if then due, and any sum or sums advanced for the payment of insurance premiums, taxes or other necessary purposes with eight per centum per annum thereon from date of said advances; next, the amount due holder of said notes or owner of the balance of the indebtedness due thereon hereby secured, and lastly, any balance shall be paid to the grantors herein, our heirs or assigns."

"The giving or taking hereafter of any other additional security to secure any indebtedness herein referred to or hereafter contracted by us with said Building & Loan Association during the life of this deed of trust shall not be construed as a waiver of the lien of this deed of trust."

It is first contended by the appellant that the lower court erred in awarding the amount of money tendered to the appellees. The contention is that appellant paid the money into the hands of the clerk of the court as a tender to the appellees in full of his debt, and in extinguishment of any and all liens held by the appellees; that appellees were proceeding to foreclose and, therefore, the appellant could not obtain an injunction without a tender of the money into court.

The general rule is that he who tenders into court money parts with the title thereto, and that the money so tendered becomes the property of the party to whom it is tendered. 26 R. C. L. 656, par. 40; Griffith's Miss. Chancery Practice, p. 562, par. 522; Memphis Machine Works v. Aberdeen, 77 Miss. 420, 27 So. 608; Collier v. White, 67 Miss. 133, 6 So. 618, and Sims v. Hardin, 132 Miss. 137, 95 So. 842.

Appellant recognizes this general rule, but insists that

the facts here bring the case within an exception thereto as stated in 26 R. C. L., p. 658, par. 42; Palm Beach Estates v. Croker, 106 Fla. 617, 143 So. 792; Dunn v. Hunt, 76 Minn. 196, 78 N. W. 1110.

The facts in the Palm Beach and Dunn cases show clearly that the parties who tendered would have irretrievably lost their lands as well as their money tendered, if, by the tender, the opposite party was adjudged title to the money tendered.

In the case at bar, there was an accounting between the parties; the appellee contending that more was due, and the appellant, by his pleading and proof, admitting that he owed the amount of the tender to the appellee. The court below properly applied the general rule to a case of disputed account.

It is next insisted by the appellant that, under the terms of the deed of trust on the Main street property, the balance due on the Forrest street property was not secured by the Main street deed of trust. The language used therein, ''And, whereas, we are anxious to secure the payment of said indebtedness, when due, in monthly installments, and also any further sum which may be advanced and not specifically mentioned herein any other sum or sums that we may owe said The Jackson Building & Loan Association,'' and, ''It is distinctly understood that this deed of trust shall be a continuing security for said indebtedness and any renewal or extension thereof, *or further advances or other indebtedness however evidenced,*'' and, ''Should default be made in the payment of any of the installments of principal or interest herein for future advances or other indebtedness hereby secured, when due,'' standing alone, would clearly be security for any debt which the grantees might owe the grantors at the time of the execution of the instrument, or subsequent thereto. See Coombs v. Wilson, 142 Miss. 502, 107 So. 874. The above-quoted language is not

ambiguous. It is a clear and plain provision of the written contract. In Witczinski v. Everman, 51 Miss. 841, this court announces the rule that clear, unambiguous language subjects the property conveyed in a deed of trust to the security of any indebtedness due or to become due to the grantee, is a sufficient description of the debt, and that parties dealing thereby are charged with notice thereof, and are therefore put upon inquiry as to the facts.

However, there appears subsequent to the above quoted language in the deed of trust language which provides for the distribution of money received by the trustee as the proceeds of a foreclosure sale as follows: "Any sum or sums advanced for the payment of insurance premiums, taxes, or other necessary purposes with eight per centum thereon from date of said advances" shall first be paid with the cost of executing this trust and trustee's fee, "next, the amount due the holder of said notes or owner of the balance of the indebtedness due thereon hereby secured, and lastly, any balance shall be paid to the grantors herein."

Appellant contends that by this language all other provisions of the deed of trust are limited, and that the trustee can only pay advances for insurance premiums, taxes, and other necessary purposes, and interest, and then, the amount due to the holder of the note therein described, and that the trustee would have no authority to pay out any sum except as described in the quoted clause setting forth directions to the trustee as to the disbursement of the proceeds.

It is to be noted that the language, "due the holder of said notes or owner of the balance of the indebtedness due thereon hereby secured," is not itself ambiguous; that which precedes the word "or" describes a person, the holder of the note as provided in the deed of trust, for whom, clearly, the grantor executed the deed of trust.

But this language, ''or owner of the balance due thereon hereby secured,'' is a description of another person or debt, or it is a repetition of that preceding the word ''or,'' and the holder of the indebtedness might be a different person, or he might be the same person. There is some difficulty in arriving at a conclusion that this latter language is a mere repetition.

We are of opinion that, if we view the whole instrument as one, and carry out the intention of the parties as disclosed by the entire instrument, even if the latter clause shall be said to be repugnant to the former clauses, which are clear and certain, in the deed of trust, the parties clearly intended to execute a deed of trust enforceable upon the property, for the payment of any indebtedness which the grantors owed the grantees. We reach this conclusion from our construction of the language of the instrument, leaving out of view the fact that in the construction of a deed, where there are repugnant clauses, and the first clauses are plain, certain, and unambiguous, the first clauses control the latter and repugnant clauses. The chancellor reached this conclusion, and in this we think he is correct. See Heard v. Garrett, 34 Miss. 152; Dunn v. Stratton, 160 Miss. 1, 133 So. 140.

It is next insisted that in his written opinion, the chancellor did not pass on the conflict of evidence, as to estoppel, and therefore this court should apply the doctrine of estoppel, because of the language attributed to Sullivan, attorney for appellee, by Clark, attorney for appellant.

At the close of Clark's testimony, he discloses that he was not positive as to what representation was made by Sullivan to him. On the other hand, Sullivan is positive that he made no such statement. The rule is to the contrary, and we must presume that the chancellor passed on this issue of fact.

We think there is no merit in this contention. If, how-

ever, there was a sharp conflict in the testimony, we do not see that the chancellor was manifestly wrong in his finding on this issue of fact.

Affirmed.