WALTERS, et ux. *v.* MERCHANTS & MANUFACTURERS BANK OF ELLISVILLE.

Nov. 16, 1953

No. 38914 43 Adv. S. 35 67 So. 2d 714

*Chas. C. Evans,* Laurel, for appellants.

*Deavours & Hilbun,* Laurel, for appellee.

ETHRIDGE, J.

This suit was brought by appellee, Merchants and Manufacturers Bank of Ellisville, Mississippi, against appellants, Frank M. Walters and wife Emma C. Walters, defendants below, in the Chancery Court of the First Judicial District of Jones County. It sought to reform a trustee's foreclosure deed based upon a deed of trust on appellants' homestead given by appellants to appellee, or in the alternative, to reform the description in the deed of trust and to enforce foreclosure thereon for the entire debt of both appellants to appellee. The chancery court held that there had been a mistake of fact in the description of the property in the deed of trust, reformed it, and ordered that appellee could make demand upon appellants for the amount found to be due, $8,000 plus interest, and directed the trustee to foreclose the deed of trust unless the amount owed was paid.

Appellant Frank M. Walters began doing business with appellee Bank around 1941 or 1942. On April 6, 1944, appellants borrowed $200 from appellee for the purpose of buying a parcel of land in Jones County in excess of forty acres, and on that day appellants executed to the Bank a promissory note for $200, payable eight months after date. Appellants admitted the execution of this note. The controversy is as to whether a deed of trust dated April 6, 1944, from appellants to appellee Bank, as beneficiary, is valid and covers the aforesaid tract of land purchased by appellants on April 8, 1944. On that date A. R. Walley and wife conveyed to Frank and Emma C. Walters, as tenants in common, the forty odd acres in question reserving in the grantors all mineral rights. The issues concerning this deed of trust are based upon appellants' claims (1) that it does not cover these lands because appellants did not own this tract on April

6, 1944; (2) that the deed of trust was not acknowledged by Emma Walters because appellants testified that she did not appear before a notary public for acknowledgment; (3) that the deed of trust is void because the appellants signed it in blank, the description of the property being inserted at a later time.

Both appellants and W. H. Ellsworth, president and cashier of appellee Bank, testified. Appellee's version of the transaction, which was accepted by the chancellor, was that appellants came to the Bank and wanted to borrow $200 in order to enable them to purchase the tract of land in question for their homestead; that appellee approved the loan, and appellants executed the $200 note of April 6, 1944. This was admitted by appellants. Ellsworth further testified that it was agreed that this property which appellants intended to purchase was to constitute security for the loan, and that April 6th was two days before appellants got their deed from the Walleys; that appellant, Frank Walters, pointed out to Ellsworth on a county map in the Bank's office the land which he said he was buying from the Walleys, and which it was agreed would serve as collateral, and that this description was inserted in the deed of trust prior to its execution by appellants. Ellsworth testified that then appellants executed the deed of trust and both of them acknowledged it in his presence, and that the description which he put in it was of the lands pointed out by Frank Walters, and that this was a mistake by all of them, since he and the Walters intended to secure the note with a mortgage on the lands to be purchased with the loaned money. On the other hand, appellant Frank Walters denied that he had furnished the description in the deed of trust which Ellsworth had inserted in it. Both appellants testified that they signed the deed of trust before any property description was put in it; that they never gave Ellsworth any property description; and that they intended the collateral to be a 1942 Buick sedan, and not these

lands. However, it is undisputed that about a month and a half before the deed of trust in question, and on February 28, 1944, Frank M. Walters had given the Bank a deed of trust on this same Buick sedan, securing a debt of $3,700. Appellants said that Mrs. Walters signed the deed of trust at her home, not in the presence of Ellsworth, who was the notary public, and that Frank Walters then took the instrument to the Bank, where the form of acknowledgment was completed. However, this case involves no innocent purchasers, and the deed of trust, if otherwise valid, would not be affected by an invalid acknowledgment, assuming but not deciding that it is such.

 We have concluded that the chancellor was amply supported by the evidence in his finding that the deed of trust was not executed with the description left blank and inserted later, but that it was properly executed; and that the wrong property description was placed in it by a mutual mistake of the parties. Hence reformation was warranted so as to correct the description of the land to identify accurately the property conveyed to appellants by the Walleys on April 8, 1944, and intended to serve as collateral in the deed of trust.

 Although appellants obtained title to the property two days after they executed the deed of trust, a warranty in a deed or deed of trust carries with it an after-acquired title later obtained by the grantor or mortgagor. Adkinson and Bacot v. Varnado, 91 Miss. 825, 47 So. 113 (1908); Ethridge, The After-Acquired Property Doctrine and Its Application in Mississippi, 17 Miss. L. J. 153 (1945).

Another issue arises with reference to determining the amount of debt secured by the deed of trust. The original secured debt was $200, evidenced by the note dated April 6, 1944. This note and deed of trust of that date were signed by both appellants, husband and wife. As reformed, the lands constituting the security are the

homestead of appellants. The deed of trust contained provisions sometimes called a "dragnet" clause: "Whereas, the said Grantors desire to secure the prompt payment at maturity, of the said indebtedness, as well as any extension of the same or any part thereof, and any other or further indebtedness that they or either of them may incur with or owe to the said Beneficiary, as hereinafter provided, . . . In addition to the aforesaid indebtedness and any and all extensions or renewals of the same or any part thereof, this instrument is intended to secure and does secure any and all debts that the said Grantors or either of them may incur with or owe to the said Beneficiary within 10 years from the statutory limitation of the within instrument from the date hereof, whether the same be evidenced by note, open account, assignment, endorsement, or otherwise."

The note upon which the deed of trust was based became due on December 6, 1944, but was not paid on that date. In the meantime, appellant Frank Walters had been engaged in several different business enterprises, and had incurred considerable individual debts to appellee Bank; one of his businesses was Walters Concrete Products and Building Company, and another was Walters Lumber Company. Frank Walters had borrowed sums up to $15,000 from appellee as a result of these and other individual business transactions and losses in them. Hence when the original $200 note was renewed on January 24, 1945, the principal amount and interest, $212.80, were consolidated, along with other debts personal to Frank Walters, and owed by him to appellee, in a new promissory note in excess of $7,000. This note and all subsequent renewal notes were signed only by Frank Walters, and not by his wife, Mrs. Emma C. Walters. She signed only the original note for $200. The chancellor found that the debt of Frank Walters to appellee Bank was something more than $8,000, all of which was past due, and the decree adjudicated that the entire debt

was $8,000 plus interest. Hence under the above quoted clause in the deed of trust, covering other debts of appellants or either of them, the chancellor directed that the entire debt of $8,000 was a valid lien under the deed of trust on appellants' homestead property. In other words, in addition to the $200 note executed by Mrs. Walters, along with her husband, the mortgage secured a debt of $7,800 plus interest based upon notes executed thereafter only by her husband, Frank Walters.

■■■ The original $200 note had written on it "Paid Jan. 24, 1945," with the name of appellee Bank. But Ellsworth testified, and the chancellor found as a fact that this meant that the amount of the original note had been renewed in a new note and not actually paid, that that was the only kind of payment made, and that the old note for that reason was returned to appellants. The record supports that finding. ■■■ We also think that the record is adequate to support the finding that the gross amount of the secured debt is $8,000 plus interest.

The principal question is whether under the quoted dragnet clause in the deed of trust the security of that instrument executed by the joint mortgagors and securing a joint debt may be construed to be extended to the individual indebtedness of one of them, the husband, afterward created. In 172 A. L. R. 1079, 1100-1105 (1948), is a detailed annotation of many cases on this subject. ■■■ Where the clause is broad enough to cover subsequent debts of one of joint mortgagors, the dragnet clause is generally construed so as to extend the security of the mortgage executed by joint mortgagors to the individual indebtedness of one of them afterward created. Baker v. Building and Loan Association of Jackson, 168 Miss. 808, 152 So. 288 (1934); Coombs v. Wilson, 142 Miss. 502, 107 So. 874 (1926); Herron v. Land, 151 Miss. 893, 119 So. 823 (1929). Campbell Brothers v. Bigham, 149 Miss. 214, 115 So. 395 (1928), and Davis v. Crawford, 163 So. 543, suggestion of error sustained in

175 Miss. 493, 168 So. 261 (1936), are distinguishable on their facts and on the provisions of the deeds of trust.

The dragnet clause here involved expressly covers "any and all debts that the said grantors or either of them may incur with or owe to the said beneficiary, . . ." The parties clearly agreed that it would secure debts incurred by both of them and by either of them. No fraud is shown, and under the contract and the decisions we must enforce the provision as written. Limitations if any upon the use of that clause must stem from the Legislature and not from this Court.

Affirmed.

*McGehee, C. J.,* and *Hall, Holmes,* and *Arrington, JJ.,* concur.