299 So.2d 215 (1974)
NEWTON COUNTY BANK, LOUIN BRANCH OFFICE and B.T. (Jack) Amos
v.
Myrtis JONES.
No. 47381.
Supreme Court of Mississippi.
August 26, 1974.
*216 Wells, Gerald, Brand, Watters & Cox, Jackson, B.T. Amos, Bay Springs, Scott P. Hemleben, Jackson, for appellants.
John M. Sims, Heidelberg, Paul G. Swartzfager, Laurel, for appellee.
BROOM, Justice:
Previously a majority of the court affirmed the decision of the Chancery Court of Jasper County. On petition for rehearing an opposite result was reached, and the former opinion of the court is withdrawn.
This is an appeal from a final decree of the Chancery Court of Jasper County which permanently enjoined appellant, Newton County Bank (Louin Branch), from foreclosing its deed of trust on homestead land of appellee, Mrs. Myrtis Jones. We now reverse and render.
Mrs. Myrtis Jones, the appellee, owned the fee simple title to the land in controversy. Her husband had only a homestead interest. She and he contemporaneously executed the deed of trust contract dated November 4, 1968 which stated that it would secure the original indebtedness in a specific sum. The instrument further stated in obvious, clear and unambiguous language that its purpose was:
[F]urther to secure all loans and advances which Beneficiary has made or may hereafter make to the Grantor, or any one of them. (Emphasis added.)
Subsequently the bank made additional advances to the husband who gave additional security on cows allegedly owned by him. The cows were missing when the bank sought to replevy them. In obtaining the advances Mrs. Jones' husband acted alone and independently of further participation or knowledge on her part. Default was made in payment of the indebtedness. The bank sought to foreclose its deed of trust against the land, but the lower court enjoined the foreclosure proceedings.
The decisive question before us is whether or not competent spouses may by a contemporaneously executed deed of trust contract permit the lien thereby created to be enlarged when one of such spouses procures a subsequent advance or *217 additional loan from the beneficiary (lender) designated in the deed of trust contract. We conclude that Mrs. Jones, her husband, and the bank contracted in such a way in this case. This conclusion is clearly consistent with a long line of decisions rendered by this Court beginning in 1882. To rule otherwise now would in effect put attorneys, borrowers, and lenders on notice that no longer may they use as a dependable guide our published decisions which have not been overruled. With this in mind, reference is made to several cases wherein the court has spoken to the question before us.
In the early case of Smith v. Scherck, 60 Miss. 491 (1882), the court recognized that where a wife joins with her husband in executing a deed of trust on homestead property to secure a debt due by him, he, acting alone, may make a new promise before the debt is barred by the statute of limitations, and establish a new period for both the debt and the security to run. Similar interpretations of contractual rights in spouses occupying homestead property are noted in the following cases: McFarlane v. Plant, 185 Miss. 616, 188 So. 530 (1939); Herron v. Land, 151 Miss. 893, 119 So. 823 (1929).
In Walters v. Merchants & Manufacturers Bank of Ellisville, 218 Miss. 777, 67 So.2d 714 (1953) the court held that a "dragnet clause," similar to the one in this case, which is clear and unambiguous in a deed of trust may cover subsequent loans made to either grantor (one) and is enforceable. In that case the facts were not significantly different from facts now before us although the court said in the subsequent case of Hudson v. Bank of Leakesville, 249 So.2d 371 (Miss. 1971) that Walters, supra, "was not decided upon the theory of an increased encumbrance of the homestead by one of the parties, and that this question remains undecided by any decision of this Court." The quoted dictum from Hudson, supra, was not necessary to the decision there, which dealt with facts not similar to the instant case. Examination of Walters, supra, reveals that the lands involved therein which constituted the security were "the homestead of appellants." At different places in the Walters opinion, the court noted and pointed out the homestead feature of the case which dealt with reformation of a land description. In that case (as in the case at bar) the subsequent notes were signed by only the husband. The court ruled that the homestead property of the parties was encumbered by the deed of trust to the extent of the total indebtedness which included the additional loans obtained by the husband acting independently of his wife. Walters said:
... . The dragnet clause here involved expressly covers "any and all debts that the said grantors or either of them may incur with or owe to the said beneficiary, ... ." The parties clearly agreed that it would secure debts incurred by both of them and by either of them. No fraud is shown, and under the contract and the decisions we must enforce the provision as written. Limitations if any upon the use of that clause must stem from the Legislature and not from this Court. (218 Miss. at 784-785, 67 So.2d at 717-718.)
The clear thesis of Walters was to allow enlargement of the original deed of trust lien, though on homestead property, by subsequent action of the husband alone when he obtained additional money. Careful study of Mississippi Code Annotated sections 85-3-21, 85-3-45, 89-1-29 and 89-1-31 (1972) does not reveal that the Legislature intended to preclude spouses from jointly entering into a bargain and executing a deed of trust or contract encumbering homestead property owned by the wife, and incorporating within such instrument a "dragnet clause." The statutes simply require that such instrument be executed by both spouses. This was done by Mr. and Mrs. Jones. Of course, the original deed of trust under section 89-1-31 would not be valid unless signed and *218 acknowledged by the wife in cases where she is the owner. Also, under section 89-1-29 the wife of an owner of homestead property must sign deeds of trust, et cetera, executed by her husband (the owner), before the conveyance or encumbrance thereon is valid.
Our decision here is not contrary to Hudson v. Bank of Leakesville, supra. Hudson held that the dragnet clause could not include an indebtedness (for a chain saw) of one of the grantors in a deed of trust made to a third party (not the original lender) subsequent to the original deed of trust. Also pertinent is the case of Davis v. Crawford, 175 Miss. 493, 168 So. 261 (1936). There the court held that the additional advances were not covered by a deed of trust on homestead property. The reason for so holding was that the "dragnet clause" contained in the deed of trust of that case did not consist of language sufficiently clear to secure additional indebtednesses made to "either" of the grantors. In Davis the "dragnet clause" provided that the deed of trust would secure payment of the original indebtedness plus any further amounts that "may be advanced to them." (Emphasis added.) The plural term "them" indicated that both spouses would have to consent to any future enlargement of the deed of trust lien. Language used by the court in the Davis opinion clearly indicates that additional future advances would have been secured by the deed of trust if the "dragnet clause" had said advances would be covered if made to ONE of them rather than "to them."
The deed of trust before us explicitly states that its purpose was "to secure all loans and advances which the beneficiary has made or may hereafter make to the grantor, or any one of them" (emphasis added). Whoever originally composed it was obviously relying upon and tracking what the court said in Davis and Walters, supra. The quoted language is sufficiently clear and in such unambiguous and unmistakeable terms as to contemplate and secure additional "loans" obtained from the bank by Mr. Jones alone. Although Mr. Jones may not have acted prudently or in the best interest of himself or his wife when he incurred the additional indebtednesses, the compelling legal aspect is that his action was precisely what she bargained for and contractually authorized him to do. Both spouses, being legally competent, had the right to jointly enter into the deed of trust contract which included the "dragnet clause." Mrs. Jones should not be allowed to escape the consequences she risked when she became signatory to such a contract. Such a clause as attacked here is not contrary to any statute cited. When inserted in a deed of trust, such a clause operates as a convenience and an accommodation to borrowing spouses. It makes available additional funds without both having to execute additional security documents, thereby saving time, travel, loan closing costs, costs of extra legal services, recording fees, et cetera.
When Mr. Jones alone obtained the advances or loans and signed promissory notes therefor he pledged certain cattle as additional security. Argument is asserted that when the cattle were treated as security for the advances, the bank in some manner surrendered or waived its security originally provided by means of the deed of trust. We are unable to find any fact in the record or any applicable legal authority whatever to support any theory that the bank lost, forfeited, gave up or waived any of its security granted it by the deed of trust. The additional security (cows which are mysteriously missing) does not defeat or operate in derogation of the clear and unambiguous language of the deed of trust.
Here Mrs. Jones reposed in her husband trust and confidence which resulted in her willingness to make the bargain evidenced by the deed of trust. In this manner she contractually allowed Mr. Jones to use her credit (secured by her *219 property). Having bargained and contracted as she did, it would be unconscionable for us to hold that her land does not secure the funds loaned by the bank in reliance upon the contract. No charge or suggestion was made that the bank was the aggressor or that Mrs. Jones fell victim to a loan shark who defrauded or overreached her in any manner. She and her husband requested the original loan which was made on the expressed provision that it would be secured by the deed of trust. They covenanted with the bank that either of them could individually enlarge the deed of trust lien as was done. This Court rightly follows the rule that our statutes on homestead and exempt property should be "liberally" construed in favor of the exemptionist. Biggs v. Roberts, 237 Miss. 406, 115 So.2d 151 (1959). Creditors were warned in the Biggs decision "that the homestead is sacred ground," but in the same decision is the admonishment that the statutes directed at homesteads are "to be construed sensibly... ." Such a construction here does not permit the court to judicially amend the homestead statutes retroactively and thereby deny the appellant its right of foreclosure created by contract.
Applicable here is language found in Adkinson and Bacot Company v. Varnado, 91 Miss. 825, 47 So. 113 (1908) which dealt with homestead laws of this state. In discussing a mortgage under attack the court said that the husband and wife "had perfect liberty and freedom ... to execute the mortgage or not."
The court later on in its opinion in that case said that the two spouses there "have by their own voluntary, solemn contract, founded on a valuable consideration, bargained away their homestead."
It was argued that for us to uphold the "dragnet clause" here would be to erode the homestead and allow the husband to do indirectly what he could not do directly. Such is not a valid argument because, in upholding the clause, we simply uphold a solemn contract, explicit in its terms. Mrs. Jones not only consented to it, but by means of it she affirmatively directed that her husband be authorized to enlarge the deed of trust security. By the contract, she assented to and ratified the contemplated additional loans. The parties complied with applicable statutes on homestead and exempt property and, as was said in the Adkinson case, supra, "bargained away" the homestead. Had it been Mrs. Jones' intent to limit the authority of her husband in any particular, she could have done so by appropriate language. She could have restricted his authority as to the amount, purpose, or use of additional funds, but no such restriction is before us.
Argument was also made that the exact total amount of a deed of trust lien must be fixed in the instrument creating the lien, and that any increase must be contemporaneously agreed upon and assented to by both spouses where homestead property is involved. Such increase may be assented to in advance as done here. In this manner both spouses frequently contract by clear language in deeds of trust or mortgages that the beneficiary (lender) may in the future pay taxes or insurance on their property if the borrowers fail to do so, or even make reasonable repairs to (if deemed necessary by the lender) the dwelling house on homestead property. The amounts or exact cost of such items cannot be ascertained at the time the deed of trust is executed. Such matters, as well as contemplated additional loans or advances, are subject to contract contemporaneously executed by both spouses as was done in this case.
We are unwilling to follow cases cited from foreign jurisdictions in order to read into Mississippi statutes unexpressed prohibitions. To follow such cases would in effect ignore the thread of prior well reasoned decisions of this Court which told borrowers, lenders, attorneys and the general public that "dragnet clauses" would *220 be enforceable if properly executed and stated in clear and unambiguous language. The clause before us is not lacking in clarity in any respect. It clearly conforms to what the court said in Walters, Davis, and Adkinson, supra, and is not violative of any statute. Accordingly, we reverse the decree appealed from.
Reversed and rendered.
RODGERS, P.J., and INZER, SMITH and SUGG, JJ., concur.
ROBERTSON, Justice (dissenting):
I respectfully dissent. The majority opinion, in my view, removes the special mantle of protection which the Mississippi Legislature, in its wisdom, carefully wrapped around the home almost one hundred years ago, in 1880 to be exact, when this special law was enacted:
"A conveyance, mortgage, deed of trust or other incumbrance of a homestead where it is the property of the wife shall not be valid or binding unless signed and acknowledged by the owner and the husband if he be living with his wife, ..." (Emphasis added). Miss. Code Ann. § 89-1-31 (1972).
To me, the intent and purpose of the legislature in enacting this law was then and is now perfectly clear. It intended to and did place the home in a class by itself, separate and apart from business or investment property. The juxtaposition of these words "conveyance, mortgage, deed of trust or other incumbrance" in the statute was no mere happenstance; it was deliberately done.
If a husband and wife sell their home they must both sign the deed of conveyance and thus must approve and consent to the exact consideration being paid for it. By the same token, if they mortgage their home they must know the exact amount that they are borrowing and must approve and consent to this exact amount by both signing the promissory note and both signing and acknowledging the deed of trust given on the home place to secure the payment of that particular note.
What possible purpose would this carefully worded statute serve or what protection would it afford an unsuspecting wife, if it can be so easily circumvented by slyly including a vague and general openend dragnet catchall clause in the fine print of a printed deed of trust form?
Merely to recite the facts of this case illustrates the harsh and unconscionable position that the appellant is taking.
Appellee Myrtis Jones acquired the forty acre home place from her parents in 1941. The legal title has always been in her; she has never conveyed any interest in it to her husband, Don Jones.
On November 4, 1968, Don Jones and Myrtis Jones, husband and wife, executed a $7,000 note to the Newton County Bank. This note became due and payable on November 4, 1969. Contemporaneously with the execution of this note, Don Jones and Myrtis Jones, husband and wife, signed a deed of trust prepared by the Bank on one of its printed forms putting up their home to secure the payment of this $7,000 note.
The deed of trust stated:
"This deed of trust is given to secure a certain indebtedness due NEWTON COUNTY BANK Louin, Miss. hereinafter referred to as Beneficiary, evidenced as follows:"
Carefully typed in was this description of the "certain indebtedness":
"1 note dated Nov. 4, 1968 for $7,000.00 and due Nov. 4, 1969"
Underneath and in small print, as a part of the Bank's printed form of deed of trust, was this vague, general and indefinite language (commonly known as a dragnet clause):
"[A]nd further to secure all loans and advances which Beneficiary has made *221 or may hereafter make to the Grantor, or any one of them."
Subsequently and unbeknown to Mrs. Jones, and on new and separate notes signed by Don Jones only, the Bank made new business loans totaling $16,412.33 to Don Jones only. No reference to the deed of trust on the home place, as being security for these new loans, appears on any of these new notes. In conjunction with these new notes, a separate financing statement was signed by Don Jones only. It recites in part:
"This financing statement covers the following types (or items) of property:
83 head of mixed grade cattle locate (sic) in my pasture and to remain there unless notified. Inclusion of proceeds on this statement does not authorize debtor to sell or otherwise dispose of this collateral"
When Don Jones failed to pay his $16,412.33 business loans, the Newton County Bank, without notice to Myrtis Jones, began foreclosure proceedings against her home to secure the payment of $23,412.33, being the $7,000 original indebtedness described in the deed of trust, and the $16,412.33 borrowed by Don Jones only.
After a full hearing on her petition to enjoin the foreclosure sale, and after her payment into court of the full amount of the $7,000 note signed by both Mrs. Jones and her husband, together with all interest and costs in the foreclosure proceeding, the Chancellor made the injunction permanent.
The Chancery Court, in making the injunction permanent, found as facts:
"The Court finds from the evidence that the Petitioner had no knowledge of the new loans incurred by her husband. That the additional advances, or loans, were obtained by Don Jones and without the knowledge and consent of his wife, Mrs. Myrtis Jones. That additional security was given by Don Jones and not signed by the petitioner, Mrs. Myrtis Jones. The Court is of the opinion that subsequent to November 4, 1968, the business negotiations by and between the Newton County Bank and Don Jones were independent and without the knowledge of Myrtis Jones and she gave no consent or approval to the additional loans. That Don Jones gave cattle as his collateral for the additional loans, which instruments were not signed by Myrtis Jones." (Emphasis added)
The majority opinion says that this Court clearly indicated in Davis v. Crawford, 175 Miss. 493, 168 So. 261 (1936) that if the dragnet clause had contained three little words "one of them" that the decision would have been in favor of Crawford, Receiver of the Bank, rather than the homeowners. That was not the impression that Honorable Justin L. Cox, a partner in the law firm representing the Bank of Newton in this case, got from Davis v. Crawford. Cox, in 1969, recompiled A Handbook of Banking Laws written by Honorable J.T. Brown, long-time President and then Chairman of the Board of the First National Bank of Jackson, in 1951.
Cox wrote:
"But what about notes evidencing future advances that may be made under the terms of the deed of trust? Are we always as careful to see to it that these are signed by both the husband and wife as we are to require the original note to be so signed? If we are not, then we are most assuredly taking a serious chance in that the consent of both the husband and wife to the enlargement of a debt secured by a deed of trust on the homestead is absolutely essential. The Supreme Court of Mississippi in Davis vs. Crawford [175 Miss. 493], 168 So. 261, definitely settled that proposition. In that case the husband and wife executed a deed of trust on their homestead securing a loan of $576.00 evidenced by a note signed by each of them The deed *222 of trust contained the usual provision covering future advances. The husband later came in and procured an additional $350.00 and executed his note therefor. The wife knew nothing of this additional advance, and did not sign the note evidencing it. Upon default in the payment of the indebtedness foreclosure was resorted to and the attempt was made to extend the lien of the deed of trust to both notes. This right was denied by the Supreme Court, which in the course of its opinion said:
"The wife's consent to the enlargement of the debt, secured by the deed of trust, was necessary. She did not so do by this contract. See 13 R.C.L., p. 645, sec. 105. `Contemporaneous assent of husband and wife, if living together, is essential to an encumbrance of the exempt homestead.' Duncan v. Moore, 67 Miss. 136, 7 So. 221." [Emphasis added].
Cox continued to stress and emphasize this point when he wrote:
"[T]he Mississippi court is in accord with the great weight of authority. It is held generally that the husband or wife alone is powerless to extend or enlarge the terms of a mortgage on the homestead. It is highly important, therefore, that both the husband and wife sign each and every note evidencing an additional advance under such deeds of trust. The law throws every possible safeguard around the homestead, therefore it would be difficult indeed to be too careful in dealing with a mortgage or deed of trust under which it might be lost. Its loss is an unfortunate circumstance usually regarded with sympathetic regret not alone by one's neighbors but by the courts as well. We may be sure that if a way can be found, within the law, whereby it may be saved from forecolsure, such way will be found. It is needless to say that if the law enacted for its protection has not been strictly complied with an attempt to take it under a mortgage or deed of trust will not be successful." [Emphasis added].
The majority opinion places great reliance on Walters v. Merchants & Manufacturers Bank of Ellisville, 218 Miss. 777, 67 So.2d 714 (1953). But this Court itself in stating the principal issues involved in Walters does not mention the homestead question:
"The issues concerning this deed of trust are based upon appellants' claims (1) that it does not cover these lands because appellants did not own this tract on April 6, 1944; (2) that the deed of trust was not acknowledged by Emma Walters because appellants testified that she did not appear before a notary public for acknowledgment; (3) that the deed of trust is void because the appellants signed it in blank, the description of the property being inserted at a later time." 218 Miss. at 780-781, 67 So.2d at 716.
In 1971, after discussing Walters in some detail, this Court said in Hudson v. Bank of Leakesville, 249 So.2d 371 (Miss. 1971):
"We conclude, from the issues presented and the question acknowledged by the Court to be before it, that Walters was not decided upon the theory of an increased encumbrance of the homestead by one of the parties, and that this question remains undecided by any decision of this Court." 249 So.2d at 373.
In Hudson, this Court also said:
"As recently as Grantham v. Ralle, 248 Miss. 364, 375, 158 So.2d 719, 724 (1963), we reiterated the purpose of the homestead provisions:
It is to be noted that these homestead provisions first were listed in the Code of 1880 primarily as a protection for the wife in lieu of dower which had been abolished by statute. The basic purpose was, of course, to prevent her husband from conveying or encumbering the homestead without the consent of his wife, and the effect was to avoid any attempt to so convey the homestead.

*223 The question presented to the Court is whether an indebtedness secured by a deed of trust executed by a husband and wife upon homestead property can be enlarged or further encumbered by the individual action of either of the spouses without the knowledge or consent of the other. If this question can be answered in the affirmative, the authority for doing so must stem from the `dragnet' clause of the deed of trust, ..." 249 So.2d at 373 [Emphasis added].
Then follows in Hudson an exact quotation of a very detailed and specific dragnet clause. It is interesting to note that the dragnet clause in Hudson was limited to future and additional advances "not to exceed the sum of $125,000.00." In the case at bar the dragnet clause is not limited as to time or amount. It is in vague, general, indefinite and unlimited language. In Hudson, the Court continued:
"By our authorities these clauses must be liberally construed in favor of the exemptionist. Biggs v. Roberts, 237 Miss. 406, 115 So.2d 151 (1959); Gardner v. Cook, 173 Miss. 244, 158 So. 150 (1934).
......
"The term `in the way of future advances hereunder, or otherwise' used in the present trust deed is not sufficiently clear or in such unmistakable terms as to include the indebtedness made to the Leakesville Hardware Company. This is particularly so, we think, when it is considered that the enlargement of the security afforded is a direct diminution of the homestead and as such is subject to a liberal construction in favor of the exemptionist both as to common assent necessary for encumbering the homestead property and specificity of terms necessary to further encumber." 249 So.2d at 373-374 [Emphasis added].
The majority opinion in the case at bar in construing the vague, general and indefinite language of the open-end dragnet clause, liberally in favor of the bank who prepared the deed of trust on one of its printed forms, and strictly against the exemptionist, is going back on its long-standing rule (announced in 1934) that "these clauses must be liberally construed in favor of the exemptionist."
In Berger v. Fuller, 180 Ark. 372, 21 S.W.2d 419 (1929), the Supreme Court of Arkansas had this to say about "dragnet" clauses:
"Mortgages of this character have been denominated `Anaconda mortgages' and are well named thus, as by their broad and general terms they enwrap the unsuspecting debtor in the folds of indebtedness embraced and secured in the mortgage which he did not contemplate, and to extend them further than has already been done would, in our opinion, be dangerous and unwise; for, if this should be done, some one who might have been engaged extensively in business and by reason of financial reverses become largely indebted and who had selected from his property a small portion upon which he and his family might dwell as their homestead, and from that vantage point begin the battle of life anew, might be deprived of it by grasping and unconscionable creditors." 21 S.W.2d at 421 [Emphasis added].
There was no testimony whatsoever in the case at bar that the appellant bank called Myrtis Jones' attention to the open-end unlimited dragnet clause hidden in the fine print. There was no testimony whatsoever that the new and separate loans totalling $16,412.33 made to Don Jones alone were to repair or improve the home. We should note well the findings of the Chancellor to the contrary. The court said:
"The Court is of the opinion that subsequent to November 4, 1968, the business negotiations by and between the Newton County Bank and Don Jones were independent and without the knowledge of Myrtis Jones and she gave no consent or approval to the additional loans. That Don Jones gave cattle as his collateral *224 for the additional loans, which instruments were not signed by Myrtis Jones."
Bearing on this point, the Supreme Court of Kansas, in Emporia State Bank and Trust Company v. Mounkes, 214 Kan. 178, 519 P.2d 618 (1974), had this to say:
"In its petition the bank prayed for the foreclosure of its mortgage not only as to the balance due on the original note executed by Mr. and Mrs. Mounkes in 1963, but also as to the amounts alleged to be unpaid on the two subsequent notes signed by Mr. Mounkes in 1971. The bank's contention in such regard was and is predicated on a so-called dragnet provision contained in the mortgage... .
......
Furthermore, the record bares no evidence of any relationship between the 1963 loan to Mr. and Mrs. Mounkes and the subsequent loan to Mr. Mounkes. There is not the slightest intimation that any part of the loan to Mr. Mounkes was to be used in the repair or improvement of the Mounkes residence  indeed, such a suggestion is negated by the statement that it was to help a son get into the restaurant business.
......
The Supreme Court of Hawaii did not look kindly on the contention thus advanced, nor did it view dragnet mortgages in general with unjaundiced eye. In the opinion it was said:
... As a court of equity, however, we will construe such mortgages very strictly against the mortgagee. .. . Completely unrestricted enforcement of such mortgages would tend to reduce the borrower to the status of economic serf. ...
`Under the ejusdem generis rule, the statute does not require us to enforce a dragnet, or anaconda, clause in a mortgage as to debts or obligations not of the same kind as the specific principal debt or obligation for which the mortgage is given. Unless the prior or subsequent advance relates to the same transaction or series of transactions, the mortgage must specifically refer to it for the advance to be secured. This court will not assist a lending institution in an attempt to captivate a borrower by inclusion in a mortgage of a broad all inclusive dragnet clause... . To attempt to foreclose, for example, on the mortgagor's home for debts incurred in operating a business and which debts are not specifically covered by the mortgage would be unconscionable and contrary to public policy.' ([Akamine & Sons v. American Security Bank, 50 Haw. 304] pp. 312, 313, 440 P.2d [262] p. 267.)
`We are aware that the trial court, in entering judgment in rem in favor of the bank, found it was the parties' intention at the time of the execution of the mortgage that it would secure payment of any sums of money which the mortgagee might loan the mortgagors or either of them. The difficulty with that conclusion is that the record contains no supporting evidence except for the dragnet clause itself. That clause we deem to be insufficient in the face of this record. As we have heretofore said, it is necessary, when determining the intention of the parties to a mortgage, that the attending circumstances and the nature of the transaction be considered. Here there is nothing from which it may be inferred that by mortgaging their homestead the defendants contemplated it would stand as security for a loan obtained by Mr. Mounkes to start his son in business eight years later. There is a total lack of evidence to sustain a presumption the two loans were related in any sense. The evidence is, indeed, quite to the contrary and we are constrained to hold the finding of the trial court is not sustained by the record.'" 519 P.2d at 620, 622, 623. [Emphasis added].
The case at bar is stronger than the Kansas case. There was no finding by the Chancellor that "it was the parties' intention *225 at the time of execution of the mortgage that it would secure payment of any sums of money which the mortgagee might loan the mortgagors or either of them".
The Court is going back on its long-standing rule of construction of construing vague, ambiguous and indefinite language strictly against the party who prepared the contract and liberally in favor of the other party who had nothing to do with inserting the ambiguous and indefinite language in the contract. See Baton Rouge Contracting Co. v. West Hatchie Drainage Dist., 304 F. Supp. 580 (N.D.Miss. 1969), aff'd per curiam 436 F.2d 976 (5th Cir.1971); Globe Music Corp. v. Johnson, 226 Miss. 329, 84 So.2d 509 (1956); Love Petroleum Co. v. Atlantic Oil Producing Co., 169 Miss. 259, 152 So. 829, 153 So. 389 (1934); Home Mutual Fire Ins. Co. v. Pittman, 111 Miss. 420, 71 So. 739 (1916).
This record is devoid of any evidence that this open-end catchall dragnet clause in the small print of the deed of trust was called to the attention of this innocent and unsuspecting housewife, yet the majority opinion says: "[T]he compelling legal aspect is that his action was precisely what she bargained for and contractually authorized him to do."
In these days when one out of every three marriages is breaking up, I am afraid that the majority opinion opens the door for this to occur: A scheming husband, or scheming wife for that matter, intending to leave the other spouse and the children, could go down to the bank, finance company or other lending institution and arrange for a new and separate loan on the note of the one scheming spouse alone for as much as the home place is worth, obtain this additional loan and leave for parts unknown. The bank, finance company or other lending institution could then foreclose on the home actually occupied by the innocent spouse and children and collect the specific loan made to both the husband and wife and any and all new loans made to one spouse only.
I think that this would be a harsh and unconscionable result indeed; a result which the Legislature, in its wisdom, specifically attempted to guard against.
I think that we should approve the efforts of a Court of Equity to carry out the intent and purpose of the Legislature to preserve inviolate the home of the wife and family against the belated attempt of a creditor to fall back on the home when the security, in the form of cattle which the bank took to secure new and separate business loans, disappeared.
GILLESPIE, C.J., and PATTERSON and WALKER, JJ., join in this dissent.