418 So.2d 786 (1982)
Wendell H. TRAPP, Jr., Substituted Trustee, FOR the USE AND BENEFIT of First Mississippi Bank of Commerce, and First Mississippi Bank of Commerce
v.
B.E. TIDWELL and Elizabeth Tidwell.
No. 53333.
Supreme Court of Mississippi.
August 11, 1982.
Rehearing Denied September 8, 1982.
*787 Smith, Downs, Ross, Trapp & Coleman, Wendell H. Trapp, Jr., Corinth, for appellants.
Price, Krohn & McLemore, Robert G. Krohn, Corinth, for appellees.
Before PATTERSON, C.J., and BOWLING and DAN M. LEE, JJ.
DAN M. LEE, Justice, for the Court:
This is an appeal from the Chancery Court of Alcorn County wherein B.E. Tidwell and Elizabeth Tidwell, defendants/appellees, obtained a temporary injunction enjoining First Mississippi Bank of Commerce (FMBC) from conducting a foreclosure sale on a certain piece of property securing a promissory note executed by B.E. Tidwell while he was employed as an officer of FMBC. FMBC filed an answer, crossbill and motion to dissolve the injunction, seeking to foreclose on the above-mentioned property. Although the note executed by B.E. Tidwell was current, FMBC sought to foreclose on its deed of trust under a dragnet clause due to several fraudulent transactions consummated by B.E. Tidwell while Tidwell served as an officer of the bank. Following a lengthy hearing, the chancellor found the dragnet clause applied only to those sums which were contracted for by Tidwell (Tidwell's promissory note and Tidwell's bank overdraft). Aggrieved of the chancellor's findings, FMBC appeals. We affirm.
B.E. Tidwell began working for FMBC in July 1974. During his employ at FMBC, Tidwell served as vice-president, senior vice-president and director. In July 1976 Tidwell left the bank.
On January 23, 1976, B.E. Tidwell executed a promissory note in the amount of $33,000 in favor of FMBC. This note was secured by a deed of trust on certain property known as the Cross Town Package Store. The deed of trust contained the following provision:
"Also, to secure any other indebtedness heretofore, now or hereafter (within the period of four years from the date hereof) contracted with either the payee in or the holder of the above described note or notes by the grantor or grantors herein or either of them whether such other indebtedness be evidenced by note, open account, overdraft or any other manner whatsoever, including also, any indebtedness of any grantor made as a joint maker, surety, endorser or guarantor."
The note was current when the present controversy arose.
The property that was secured by this deed of trust was later conveyed to Frankie Tidwell (B.E. Tidwell's wife) and then to Elizabeth Tidwell (B.E. Tidwell's mother).
FMBC subsequently instituted foreclosure proceedings against the property based on losses suffered by the bank as a result of Tidwell's actions while he was an officer of the bank.
The bank alleged the following amounts were due by Tidwell and were encompassed within the coverage of the aforementioned dragnet clause:
(A) A promissory note executed by B.E. Tidwell dated January 23, 1976, in the principal sum of $33,000 with $27,217.18 due and owing.
(B) An overdraft to the personal checking account of B.E. Tidwell in the sum of $1,505.76 as of August 1, 1979.
(C) A promissory note executed by T.R. Byrd dated November 21, 1975, in the principal amount of $6515, the proceeds of which were deposited directly to the account of B.E. Tidwell. As of August 1, 1979, $7,125.67 was owed on this note.
(D) A promissory note executed by Tim Tucker dated May 26, 1976, in the principal sum of $6500, the proceeds of which were diverted to the use of B.E. *788 Tidwell. $8,570.56 was the balance due on this note as of August 1, 1979.
(E) A promissory note executed by B.E. Tidwell and his wife, Frankie Tidwell, on February 7, 1975, in the principal sum of $12,755. This loan was secured by real property as well as a 1974 MGB automobile. After the Tidwells defaulted upon the note, the bank instituted foreclosure proceedings against the real property. The bank purchased the property at the foreclosure sale for $10,347.98 and also obtained a default judgment against the Tidwells in the amount of $3400 when it sought to replevy the automobile.
(F) A loss to FMBC in the amount of $16,900 resulting from the issuance of a credit life insurance policy on the life of B.C. Garrett by Merit Life Insurance Company in connection with a promissory note showing B.C. Garrett as the borrower, dated February 24, 1976, in the principal amount of $19,597.50. The proceeds of the loan were deposited to the account of Cross Town Package Store, a business in which B.E. Tidwell had an interest.
(G) Two promissory notes executed by Carol P. Bonds dated November 15, 1974, and November 18, 1974, in the respective amounts of $2,883.76 and $2448, the proceeds of which were diverted into B.E. Tidwell's personal checking account. As of August 1, 1979, $5,331.76 remained owing on these notes.
(H) A promissory note executed by Carol P. Bonds dated July 9, 1975, in the principal amount of $32,445.04. This loan was made as a result of a fraudulent financial statement and the proceeds were actually received by M.M. Bartlett who was in extreme financial difficulty as well as beyond his legal lending limits at the bank. All of this was known by B.E. Tidwell.
(I) A promissory note executed by Robert F. Gates dated March 21, 1975, in the principal sum of $31,000, the proceeds of which were diverted to the use of M.M. Bartlett to evade the legal lending limit of the bank. This loan was likewise secured by non-existent collateral of which B.E. Tidwell had full knowledge.
(J) A promissory note executed by Frankie Tidwell dated March 24, 1976, in the principal amount of $8,002.50 and secured by a 1976 Oldsmobile automobile. The security interest in the automobile was never perfected. When B.E. Tidwell was notified about the defective security interest, he did nothing to correct the same. Tidwell and his wife subsequently succeeded in obtaining a lost certificate of title and thereafter pledged the automobile as collateral for a loan at another bank. $10,024.48 remained owing on this note as of August 1, 1979.
B.E. Tidwell was subsequently indicted in federal court for various counts of false pretense, embezzlement and misappropriation of bank funds.
At the conclusion of the lengthy hearing, encompassing voluminous exhibits and testimony, the learned chancellor, construing the dragnet clause most strongly against the drawer (FMBC), found that only those debts which arose by way of contract were encompassed within the dragnet clause, and stated in part as follows:
It will be necessary for the Court to consider each one of the claims separately and to make an individual determination.
Perhaps the most critical issue before the court is the determination of the extent and coverage of the dragnet clause in the deed of trust. This is important because the value of the mortgaged property is much greater than the original debt. It has been estimated that the value of the mortgaged property may be in the approximate amount of $120,000.00, while the balance on the original note as of August 1, 1979 was $27,217.18.
The claims by the Bank against B.E. Tidwell arise primarily out of actions by Tidwell while he was an employee and officer of the Bank. The Bank claimed losses from the acts of Tidwell and others in the amount of $2,500,000.00 and called on their bonding company to make good these losses. After negotiation the bonding company, United States Fidelity and Guaranty Company, paid the Bank the *789 amount of $620,000.00, Exhibit 16, with the Bank retaining its rights to recover from all persons all or any part of the losses it has sustained. United States Fidelity and Guaranty Company waived its right of subrogation. B.E. Tidwell was convicted of criminal acts in the United States District Court and received a prison sentence.
For the reasons above the dragnet clause is important here. At the outset, it appears that the Bank prepared the deed of trust with the dragnet clause in it. The language of the dragnet clause provision was chosen by the Bank. The cases cited in the briefs show that an instrument drawn by a party in interest must be construed most strongly against the drawer.
The dragnet clause is quoted above and it must be noted that the critical words in the clause are "contracted with". The clear and precise language allows the security to attach to other indebtedness arising by way of contract. There is no intention either expressed or implied to have the security lien of the dragnet clause attach to an unliquidated claim or tort. The clear language of the dragnet clause extends to other indebtedness contracted by the borrower. (emphasis ours).
The chancellor, in considering each of the claims independently, then made the following specific findings:
CLAIM A
The original note and deed of trust is identified as Exhibit 2. At the time the injunction was issued this note was current in its payments. There was due at the time of the calculation of the balance as of August 1, 1979, the unpaid balance of $27,217.18. See Exhibit 15 for schedule of balances.
CLAIM B
This claim relates to an overdraft of B.E. Tidwell, Exhibit 3, to the Bank. It is admitted that B.E. Tidwell owes the amount of the overdraft, but it is contended by him that it does not come within the coverage of the dragnet clause. The overdraft is specifically within the dragnet clause, which states that the dragnet clause includes "also to secure any other indebtedness ____ whether such indebtedness be evidenced by ____ overdraft or any other manner whatsoever ..." The amount due on the overdraft as of August 1, 1979 was $1,505.76. The court is of the opinion that this indebtedness is within the provisions of the dragnet clause. See Exhibit 15 for record of balance.
CLAIM C
This claim is Exhibit 4 and is a promissory note originally executed by T.R. Byrd on November 21, 1975 in the principal amount of $5,615.00. It is admitted that this is an obligation of B.E. Tidwell to the Bank, but it is denied that it is covered by the dragnet clause. This is a loan made by B.E. Tidwell in his capacity as a loan officer purportedly to T.R. Byrd, with listed security. The proceeds of this transaction were deposited directly to the account of B.E. Tidwell. This was a fraudulent transaction and was manipulated by Tidwell to unlawfully convert the proceeds of the loan to his own use. It is admitted by Tidwell that he owes the Bank money, but it is denied that it is covered by the dragnet clause of the deed of trust. The conversion of this money appears to the court to be a matter of tort, rather than a matter of contract covered by the dragnet clause. The court is of the opinion that the T.R. Byrd note does not come within the provisions of the dragnet clause. However, the Bank is entitled to a judgment for the balance due as of August 1, 1979 in the amount of $7,125.67 plus interest. See Exhibit 15. This excludes attorney's fees included in the final balance on Exhibit 15. The Court is of the opinion attorney's fees called for in the note would not apply here. On the face of the note, attorney's fees were contracted for by T.R. Byrd, not B.E. Tidwell.

*790 CLAIM D
This claim is on the Tim Tucker note, Exhibit 5. This transaction is similar to the T.R. Byrd. It is admitted that B.E. Tidwell owes the Bank this debt, but it is denied it is covered by the dragnet clause. This was a fraudulent loan from which Tidwell received the money, although Tidwell did not sign the check of the Bank to Tucker. However, he did receive the money and convert it to his own use. For the same reason given in the T.R. Byrd transaction, the court is of the opinion that this does not come within the dragnet clause, and neither would the matter of attorney's fees. The balance calculated from Exhibit 15, is that as of August 1, 1979, Tidwell owes the amount of $8,570.56 for which a judgment is given, plus interest.
CLAIM E
This claim is shown by Exhibits 6 and 7 and relates to a promissory note executed by Bill Tidwell and his wife, Frankie Tidwell on February 7, 1975 in the original principal amount of $12,755.00. The security for this loan was real estate and an automobile. The Bank instituted Replevin proceedings for the automobile in the Circuit Court, resulting in a judgment of $3,400.00 on May 30, 1977. This loan included both the real estate and automobile described in the loan documents. Default was made in the payments of the loan and the real estate was foreclosed by the Bank. Sale was made by the Trustee and the Bank became the purchaser at the Trustee's sale for $10,347.98. The trustee's deed is dated May 11, 1977. In the course of the trial counsel for the Bank stated that it made no claim on the Tidwell note dated February 2, 1975, Exhibit 7, and the amount shown on the Schedule of Debts, Exhibit 15, was deducted from the totals claimed by the Bank. It is not clear how the Bank applied the proceeds from the foreclosure, but since the Bank does not now make any claim on the Tidwell note of February 2, 1975, it should not be included in this suit as a claim. It is likewise not clear if the foreclosure on the real estate discharged the claim on the automobile. The foreclosure on the real estate and the Replevin suit took place about the same time. It does not now appear that the judgment should be within the coverage of the dragnet clause.

CLAIM F
The B.C. Garrett  Merit Life Insurance claim is shown by Exhibit 8. There has been no issue raised as to the liability of B.E. Tidwell to the Bank. Tidwell contends this claim is not covered by the dragnet clause. This claim arose from Tidwell causing a credit life insurance policy to be issued on the life of B.C. Garrett by Merit Life Insurance Company. This was a fraudulent transaction perpetuated by Tidwell on the Bank for which he is fully liable. The amount of this claim as of August 1, 1979 is $19,532.00 for which the Bank is entitled to a judgment, plus interest. However, this not being covered by the dragnet clause, it cannot be included as a claim under the dragnet clause in this suit. Tidwell contends that the release between the Bank and Merit Life Insurance Company also releases him since he was an agent of Merit. The Court finds no merit in this contention of Tidwell.
CLAIM G
Exhibit 9 is for two promissory notes signed by Carol P. Bonds in the original amounts of $2,883.76 and $2,448.00. B.E. Tidwell admits he is liable for these indebtedness, but denies they are within the coverage of the dragnet clause. The proceeds from these notes were fraudulently obtained by Tidwell, and which went into his personal account. These notes total $5,331.76 for which the Bank is entitled to a judgment plus interest from November 15, 1974. However, this claim does not come within the dragnet clause.

*791 CLAIM H
Exhibit 10 relates to the note of July 9, 1975 signed by Carol P. Bonds in the principal amount of $32,445.04. B.E. Tidwell was the loan officer handling this transaction. He secured the note from Carol P. Bonds, which showed Bonds owned 150 head of cattle and 200 acres of soybeans. Her financial statement reflected a net worth of $54,800.00. Bonds did not own any cattle or soybeans. The financial statement was admittedly fraudulent. The entire transaction was made for an unlawful purpose. Tidwell claims the funds were put into the account of one of its customers to evade the legal lending limit of the Bank. The customer M.M. Bartlett, owner of E-Z Lounger and True Frames, Inc. were in extreme financial difficulty, all of which was known to Tidwell. It is claimed by Tidwell that he was told by the Chairman of the Board and the President of the Bank to make the loan. B.E. Tidwell was the loan officer who handled the fraudulent transaction well knowing it to be fraudulent. He was the responsible officer of the Bank, and even if told by his supervisors, he was not relieved from his own wrongdoing. The Bank is entitled to recover the amount of $32,445.04, plus interest from July 1975. However, this type of fraudulent action does not come within the provisions of the dragnet clause.

CLAIM I
This claim is that of the Robert F. Gates loan which is very similar to the loan of Carol P. Bonds in Claim H. Exhibit 11 shows the note of Robert F. Gates, plant manager for M.M. Bartlett, for $30,160.00 dated March 21, 1975. As in the Bonds loan, the Gates loan was supported by a financial statement which was prepared by Tidwell and was a fraudulent statement. Gates could not have repaid the loan. The security for the loan was 350,000 board feet of lumber, which Gates did not have. The proceeds of this loan was taken by Tidwell and placed in Gates' account who in turn paid the money over to M.M. Bartlett and E-Z Lounger for the purpose of evading the legal lending limit of the Bank. M.M. Bartlett and E-Z Lounger were in deep financial difficulty. This transaction must be classed as fraudulent on the part of B.E. Tidwell. A Judgment against B.E. Tidwell will be awarded for the unpaid balance as of August 1, 1979 in the amount of $39,328.45 plus interest accrued to date. However, this claim does not fall within the provisions of the dragnet clause of the deed of trust.

CLAIM J
This claim is identified in Exhibit 14. On March 24, 1976 B.E. Tidwell made a loan to his wife, Frankie Tidwell for $8,002.50. A 1976 Oldsmobile was pledged as security. B.E. Tidwell did not show the Bank as a lienholder in the application for the certificate of title to the automobile. The security instrument in the automobile was never perfected, and was the responsibility of B.E. Tidwell as loan officer. Later during a bank examination, this failure was pointed out to B.E. Tidwell, who did nothing about it. B.E. Tidwell left the Bank and he and his wife Frankie Tidwell applied for a lost certificate of title with the Motor Vehicle Comptroller and in fact borrowed money from another bank on the same automobile and the note to the Bank here was never paid. The circumstance of the making of this loan to his wife by B.E. Tidwell make it quite clear this loss to the Bank was a result of gross negligence and fraud. The Bank is entitled to a judgment against B.E. Tidwell for $10,024.48, plus interest. This is calculated as of August 1, 1979. Unfortunate as it is in this claim, being a loan to the wife of B.E. Tidwell, the court is of the opinion that the loss does not come within the dragnet clause of the deed of trust.

I. Did the dragnet clause within FMBC's deed of trust operate to secure claims of FMBC which arose as a result of appellee's fraudulent actions while employed at FMBC?
*792 The dragnet clause contained in FMBC's deed of trust provided as follows:
"Also, to secure any other indebtedness heretofore, now or hereafter (within the period of four years from the date hereof) contracted with either the payee in or the holder of the above described note or notes by the grantor or grantors herein or either of them whether such other indebtedness be evidenced by note, open account, overdraft or any other manner whatsoever, including also any indebtedness of any grantor made as a joint maker, surety, endorser or guarantor."
There is no question that dragnet clauses are enforceable if properly executed and stated in clear and unambiguous language. Newton County Bank, Louin Branch Office v. Jones, 299 So.2d 215 (Miss. 1974).
Newton County Bank, Louin Branch Office v. Jones, supra, involved the attempted foreclosure of homestead property owned in fee simple by Mrs. Myrtis Jones. On November 4, 1968, Mrs. Jones and her husband executed a deed of trust on their homestead which deed of trust contained a dragnet clause to secure all future loans and advances made to the grantors, or any one of them. Subsequently the husband, who only had a homestead interest in the property, received additional advances from the bank secured by cattle allegedly owned by him. When default was made, the bank sought to foreclose its deed of trust against the land, but the lower court enjoined the foreclosure proceedings. In reversing the lower court, this Court held the advances made to the husband alone were within the purview of the dragnet clause entitling the bank to proceed against the homestead property upon default of the indebtedness by the husband.
The case sub judice is clearly distinguishable from Newton County Bank, Louin Branch Office v. Jones, supra. In the present case FMBC sought to foreclose on its deed of trust securing B.E. Tidwell's original promissory note for indebtedness to the bank which arose because of the tortious or fraudulent action of Tidwell and did not involve an innocent third party. Tidwell was not a party to the contracts whereby the indebtedness was created, but was merely instrumental in approving the extension of indebtedness to various individuals.
The deed of trust having been drafted by FMBC must be most strongly construed against FMBC. Williams v. Life Insurance Company of Georgia, 367 So.2d 922 (Miss. 1979). In Amos v. Lance, 355 So.2d 84 (Miss. 1978), we held the failure to reduce an alleged deficiency to a liquidated claim or judgment could not be the sole basis for foreclosure of a deed of trust containing a dragnet clause. The chancellor found and we agree that there was no intention, either express or implied, that the dragnet clause attach to an unliquidated claim or tort. The amount of indebtedness allegedly owed by Tidwell as a result of his tortious and fraudulent actions was never reduced to a liquidated amount. In fact, throughout the trial the bank remained unsure as to the exact indebtedness of Tidwell to the bank. The chancellor as the finder of fact specifically found the claims sought to be included under the dragnet clause were acts of Tidwell and others, in the amount of $2,500,000.00, were unliquidated or tort claims and we are unable to say his findings as such were manifestly wrong.
Moreover, prior to purchasing the aforementioned property, Mrs. Tidwell met with Ed Caviness, Chairman of the Board and President of FMBC pertaining to the assumption of the Tidwell note secured by the deed of trust containing the dragnet clause. With FMBC's permission, Mrs. Tidwell, who is admittedly a bona fide purchaser in an arm's length transaction, having assumed approximately $120,000 in mortgages on this property, which was its full value, was allowed by FMBC to assume the $32,000 loan. Mrs. Tidwell was never advised of the bank's intentions to include the other claims of indebtedness against her son before she assumed the deed of trust nor was she advised of a different amount due on the deed of trust, including everything the bank now claims under the dragnet *793 clause. The bank having failed to do so, is now estopped from asserting a larger amount secured by the deed of trust. To allow the bank to grant Mrs. Tidwell permission to assume a loan with a balance of approximately $32,000 and then later, to her detriment, accelerate that balance to approximately $103,000 by virtue of an obscure dragnet clause, would offend any concept of justice.
Based on our review of the record, extensive briefs, and detailed findings of the chancellor as to both the facts and the law, we are unable to say he was manifestly wrong in his findings of fact or conclusions of law.

II. Did the chancellor err in allowing appellee to collaterally attack a final judgment of the Circuit Court of Alcorn County?
One of the claims (Claim E) alleged by FMBC to be covered by its dragnet clause was a promissory note in the total amount of $12,755 dated February 7, 1975, and executed by B.E. and Frankie Tidwell. This note was secured by a 1974 MGB automobile and a deed of trust on one and one-half acres of land. When the Tidwells defaulted on the note, the bank foreclosed on the property, purchasing the same for $10,347.98. FMBC also sought to replevy the automobile securing the loan. However, no answer was filed by the Tidwells and a default judgment in the amount of $3400 was entered against the Tidwells.
FMBC contends the chancellor erred in allowing B.E. Tidwell to testify in a manner which constituted a collateral attack on the judgment and resulted in a ruling by the lower court that the judgment was invalid. In our opinion, the chancellor properly allowed testimony as to the $3400 judgment in an effort to determine (1) if it was an obligation that would be included under the dragnet clause whether it be by default judgment, contract, note or whatever; (2) further, that if it was a contract debt, was any amount still due thereon; and (3) whether the amount due on the loan involved in this transaction ($12,755) was in fact paid by Tidwell or satisfied by virtue of the foreclosure sale of the real estate which secured the note together with the 1974 MGB automobile.
Moreover, this further establishes that the unliquidated claims against Tidwell were not ascertainable when the bank attempted to foreclose upon the real estate and pay the amount of the loan ($9,074.58) plus trustee's fees and advertising costs of the trustee's sale. The purchase of the real estate by the bank was sufficient to liquidate the entire loan secured by the one and one-half acres of real estate and the MGB automobile. However, the bank examiner ordered the bank to reduce the amount received at the trustee's sale from $10,347.98 to $1,215.91, being the value of the real estate as determined by the bank examiner, thereby creating a $7,858.67 deficiency on the note which the bank attempted to encompass within the provisions of the dragnet clause.
We are unable to say the chancellor was manifestly wrong as to his findings on Claim E or that he erred in allowing testimony concerning the $3400 judgment.
The chancellor must be complimented upon his handling of this detailed and complicated trial, requiring many days of trial, and five volumes of exhibits and testimony. His detailed findings of fact upon each separate claim and his interpretation of whether the amount was liquidated or unliquidated and would come within the dragnet clause, have been of great benefit to this Court.
After extensive study of the record, the briefs and applicable law, we are unable to say the chancellor was manifestly wrong in any of his findings of fact or conclusion of law. It therefore follows that this cause is affirmed.
AFFIRMED.
PATTERSON, C.J., SUGG and WALKER, P. JJ., and BROOM, ROY NOBLE LEE, BOWLING, HAWKINS and PRATHER, JJ., concur.