In re Elizabeth A. JACKSON, Debtor.

Fairlene B. LINDSEY, an Individual, and Fairlene B. Lindsey, as Executrix of the Estate of A.D. Ellis, Plaintiff,

v.

Elizabeth A. JACKSON; Jaco, Inc.; and United Southern Bank, a Mississippi Corporation, Defendants.

Bankruptcy No. S82–30073.
Adv. No. 82–3205.

United States Bankruptcy Court,
N.D. Mississippi.

March 12, 1984.

Dewitt Hicks, Jr., Gholson, Hicks & Nichols, Columbus, Miss., Robert E. McCormick, Oxford, Miss., for Fairlene B. Lindsey.

Barrett Clisby, Roberts & Clisby, Oxford, Miss., for Elizabeth A. Jackson.

## OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

CAME ON to be heard and was heard the amended complaint to determine dischargeability of a debt and other relief filed by the Plaintiff, Fairlene B. Lindsey, individually, and Fairlene B. Lindsey, as Executrix of the Estate of A.D. Ellis; amended answer filed by the Defendants, Elizabeth A. Jackson; Jaco, Inc.; and United Southern Bank, a Mississippi corporation; all parties being represented by their respective attorneys of record; on proof in Open Court; and the Court having heard and considered same, finds as follows, to-wit:

### I.

That this Court has jurisdiction of the subject matter and the parties to this cause of action.

### II.

The Plaintiff, Fairlene B. Lindsey, who was seriously injured in an automobile accident in September, 1977, is the mother of James C. Jackson, referred to herein as Jack Jackson, the former husband of the Defendant, Elizabeth A. Jackson. While convalescing from her injuries, the Plaintiff executed and delivered a power of attorney to her son dated June 15, 1978. Utilizing this power of attorney Jack Jackson assisted in the settlement of the personal injury claims on behalf of his mother, realizing the net sum of $49,000.00. The proceeds were designated as $40,286.19 to Mrs. Lindsey individually and $9,348.70 to Mrs. Lindsey as Executrix of the Estate of A.D. Ellis. Without contradiction, Jack Jackson invested and transferred these settlement funds, along with the balance of funds in Mrs. Lindsey's Tuscaloosa V.A. Federal Credit Union account in the sum of $4,646.99, through the First Alabama Bank to Oxford Bank and Trust, Oxford, Mississippi, ultimately resulting in the issuance of six (6) certificates of deposit, totaling $50,000.00. Each of these certificates of deposit was initially issued in the names of Fairlene B. Lindsey or Betty Jackson, but the name of Mrs. Lindsey was subsequently stricken by bank officials on the instruction of Jack Jackson. The six (6) certificates of deposit were either pledged as collateral for several loans made to the Defendant, or were negotiated as described on Plaintiff's Exhibit 24, the summary prepared by H.C. Wiley, Jr., Vice President and Cashier, Oxford Bank and Trust, as follows:

10–17–78    Loan # 19, made to Betty Jackson, in the amount of $10,000.00, secured by CD No. 1021. Proceeds de-

posited to checking account No. 300–694–8 (Betty Jackson).

1-2-79  Loan # 27, made to Betty Jackson, in the amount of $10,000.00, secured by CD No. 1023. Proceeds deposited to checking account No. 300–694–8 (Betty Jackson).

1-16-79  Loan # 35, made to Betty Jackson, in the amount of $5,000.00, secured by CD No. 1022. Proceeds deposited to checking account No. 300–694–8 (Betty Jackson).

3-23-79  Loan # 43, made to Betty Jackson, in the amount of $10,000.00, secured by CD No. 1024. Proceeds deposited as follows: $9,000.00 to checking account No. 600–624–8 (Jaco, Inc.); $1,000.00 to checking account No. 301–301–4 (Betty Jackson).

4-23-79  Loan # 51, made to Betty Jackson, in the amount of $5,000.00, secured by CD No. 1026. Proceeds deposited to checking account No. 301–301–4 (Jack Jackson).

Total principal amount of loans secured by certificates of deposit $40,000.00.

5-7-79  Certificates of Deposit Nos. 1021, 1022, 1023, 1024, and 1026 (total $40,000.00) were cashed with proceeds used to liquidate loan Nos. 19, 27, 35, 43, and 51 (total $40,000.00) Interest on CDs amounted to $1,540.21 with forfeiture of $87.16 for early withdrawal (net $1,452.05) Interest on loans totaled $1,192.91.

5-17-79  Certificate of Deposit No. 1025 in the amount of $10,000.00 was cashed in with proceeds distributed as follows: Deposit to checking account No. 300–694–8 (Betty Jackson) - $900.00; cash - $8,734.05 (Total $9,634.05).

### III.

According to the testimony of Jack Jackson, H.C. Wiley, Jr., and Elizabeth Jackson, Jack Jackson directed and orchestrated the sequence of financial transactions with Oxford Bank and Trust, as well as, the manner in which the funds were moved from the Alabama accounts to Oxford Bank and Trust. There was no proof in contradiction to the fact that Jack Jackson confiscated his mother's funds, overreaching under the authority of the power of attorney, and converted the funds primarily to his own benefit. The Defendant, Elizabeth Jackson, contributed, however unwittingly, to this scenario by her careless execution of the several loan documents and the endorsement of the six (6) certificates of deposit. Although there was testimony to the effect that the Defendant received certain benefits from these funds, such benefits were insignificant in comparison to the amounts squandered directly by Jack Jackson.

### IV.

The Court notes that the Plaintiff filed suit and obtained a default judgment against her son in the United States District Court for the Northern District of Mississippi in the sum of $54,281.88, plus interest and costs, representing the amount wrongfully taken from her. The Court has read the transcript of the testimony taken in that proceeding, as introduced into evidence, and finds that said testimony is consistent with the testimony in this proceeding, i.e., Jack Jackson stated unequivocally that he was the one responsible for taking and spending his mother's monies, and that his former wife, the Defendant herein, had no part in the decisions on transferring or expending the funds.

### V.

The burden of proof in this case on the issue of whether the Defendant has violated the provisions of 11 U.S.C., Section 523(a)(2)(A), is by clear and convincing evidence and rests upon the Plaintiff. Although as mentioned hereinabove, there is an element of proof concerning the Defendant's involvement in assisting her former husband in obtaining his mother's monies, the overwhelming proof reflects that the Defendant's actions were at best that of the pawn and her direct benefits negligible. The Plaintiff, therefore, has failed to sustain her burden of proof in this proceeding,

and as such, the debt if such could be considered owed to the Plaintiff by the Defendant, would be one that is dischargeable in bankruptcy.

## VI.

The second part of this case deals with the issue of whether or not Jack Jackson fraudulently conveyed his undivided one-half interest in the homestead property, formerly owned jointly by he and his wife, to the Defendant as a part of their divorce proceeding. This Court considers this point solely because the Plaintiff seeks to effect execution against an asset, claimed as exempt, of the Defendant-Debtor's estate. To better understand this issue, a brief factual chronology should be recited. Jack Jackson and the Defendant jointly acquired the subject property on or about February 25, 1974. At this time, there was a deed of trust encumbering the property, securing an indebtedness incurred by former owners. This indebtedness, assumed by the Jacksons, is in favor of North Mississippi Savings and Loan Association and currently has a balance of approximately $18,000.00. On February 26, 1974, Mr. and Mrs. Jackson executed a promissory note and second deed of trust, encumbering the real property, in favor of Bank of Oxford; the said deed of trust contained a future advances clause applicable to either debtor. On December 10, 1979, as a part of their on-going divorce proceeding, Mr. and Mrs. Jackson executed a property settlement agreement which provided that Mr. Jackson would convey his entire title and interest to the subject real property to the Defendant herein. As such, on the same date, a quitclaim deed was executed by Mr. Jackson to his wife which is recorded in Deed Book 344 at page 476 of the official land records of Lafayette County, Mississippi. The final decree of divorce was entered on February 14, 1980. Introduced into evidence was a homestead declaration, executed by Mr. Jackson, under date of June 15, 1979, applicable to the real property that he subsequently conveyed to his wife.

Following the divorce, Mrs. Jackson, on November 7, 1980, executed a promissory note and deed of trust, encumbering the subject real property, in favor of United Southern Bank, successor corporation to the Bank of Oxford. This deed of trust was recorded in Book 471 at page 31 of the land records of Lafayette County, Mississippi, and the related indebtedness, according to the testimony of Mrs. Jackson, has a current balance of approximately $3,000.00. The judgment obtained by the Plaintiff herein against her son in the United States District Court, discussed hereinabove, was entered on July 1, 1980. Although the resolution of lien priorities is not a critical factor in this case, all as discussed hereinbelow, this Court is of the opinion that any lien created by the judgment obtained by the Plaintiff in the United States District Court is inferior to the two liens existing in favor of North Mississippi Savings and Loan Association and United Southern Bank, not only because of the chronology of filing dates, but because of the future advances clause contained in the Bank of Oxford deed of trust. See *Whiteway Finance Company, Inc. v. Green,* 434 So.2d 1351 (Miss.1983) and *Newton County Bank, Louin Branch Office v. Jones,* 299 So.2d 215 (Miss.1974).

## VII.

In regard to whether the conveyance from Jack Jackson to the Defendant was fraudulent, the Court notes the following:

a. The conveyance was made as a part of a property settlement agreement entered into in an on-going divorce proceeding. It is a common occurrence for the husband, who is vacating the residence, to convey his interest in same for no actual cash consideration, but more often in lieu of the payment of alimony or maintenance to the wife.

b. The Court notes that the Defendant herein has continued to pay the indebtedness existing in favor of North Mississippi Savings and Loan Association, as well as, by the execution of the subsequent promis-

sory note and deed of trust in favor of United Southern Bank, has, in effect, continued the payment of the indebtedness originally executed by both spouses in favor of the Bank of Oxford. See *Whitehead v. Commercial Credit Plan Consumer Discount Company, d/b/a Commercial Credit Plan,* unpublished opinion written by Judge Dan M. Russell, Jr., dated September 28, 1982, United States District Court, Southern District of Mississippi.

c. Even though the property at the time of the conveyance was claimed as the homestead of Jack Jackson, the property also was and still is the homestead of the Defendant, Elizabeth A. Jackson, entitled to the $30,000.00 statutory exemption. It is illogical to presume that the conveyance by Mr. Jackson to his wife as a result of the divorce eradicated her homestead exemption privilege. If the contrary were true, every conveyance between husband and wife, resulting as the product of a divorce settlement, would annul the homestead exemption rights of the party receiving title to the real property. See Section 85–3–21, Mississippi Code of 1972, as amended; also *Grass v. Great American Bank,* 414 So.2d 561, (Fla.App.1982); *Edmonson v. Meacham,* 50 Miss. 34 (1874); *Blackmon v. Blackmon,* 350 So.2d 44 (Miss.1977).

d. From the evidence presented at the trial of this case, this Court is not convinced that Mr. Jackson was rendered insolvent by the conveyance of his undivided one-half interest in the homestead property to his wife. To the contrary, the testimony was undisputed that Mr. Jackson was at that time and still is being paid disability or retirement benefits from his former employer, the United States Postal Service, as well as, the Veteran's Administration.

e. At the time of the conveyance from Mr. Jackson to the Defendant, the judgment which was subsequently entered in the United States District Court was nonexistent as a lien against any properties owned by Mr. Jackson. The only judicial lien in effect was a judgment in favor of The Anchorage Company, (See *The An-*

*chorage Company v. Elizabeth A. Jackson,* Adversary Proceeding No. 82–3186, U.S. Bankruptcy Court, Northern District of Mississippi), and this judgment has now been rendered unenforceable due to the passage of the statute of limitations.

That because of the circumstances listed hereinabove, this Court is of the opinion that the conveyance of the undivided one-half interest in the homestead property from Mr. Jackson to the Defendant was not a fraudulent conveyance, and said conveyance will not be set aside by this Court.

VII.

Because of the totality of the factual circumstances in this case, as seen by a full trial on the merits, the Court feels that to award attorney's fees against the Plaintiff would be clearly inequitable, and therefore the Court declines to do so.

An Order will be entered consistent with this Opinion.