In re Floyd A. OSWALT and Shelia Beatrice Oswalt d/b/a Oswalt Construction Company, Debtors.

The FIRST NATIONAL BANK OF GREENVILLE, Plaintiff,

v.

Floyd A. OSWALT and Shelia Beatrice Oswalt, d/b/a Oswalt Construction Company, Defendants.

Bankruptcy No. S83–40042.
Adv. No. 83–4238.

United States Bankruptcy Court, N.D. Mississippi.

Dec. 6, 1983.

James Milam, Campbell & Delong, Greenville, Miss., for First Nat. Bank of Greenville.

Robert D. Evans, Crawford & Evans, Greenville, Miss., for Floyd A. Oswalt, et al.

## OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

CAME ON to be heard and was heard the amended complaint for determination of existence, extent and priority of secured status and security interests, filed by The First National Bank of Greenville, referred to herein as Plaintiff and/or Creditor; answer and affirmative defenses having been filed by Floyd A. Oswalt and Shelia Beatrice Oswalt, d/b/a Oswalt Construction Company, referred to herein as Defendants and/or Debtors; all parties being present in Open Court and represented by their respective attorneys of record; on proof in Open Court; and the Court having heard and considered same, finds as follows, to-wit:

## FINDINGS OF FACT

### I.

Pertinent to this case, the Debtors executed five (5) promissory notes in favor of the Creditor, each of which will be discussed hereinbelow:

A. The Debtors executed a promissory note, dated August 28, 1978, in the total sum of $55,503.60, including pre-calculated interest, payable in 120 monthly installments in the sum of $462.53, beginning October 1, 1978. This particular promissory note was secured by the residence of the Debtors located at 2760 Essex Place, Greenville, Mississippi, being also described as Lot 105 of the Country Club Estates Addition to the City of Greenville. The promissory note, disclosure statement, and deed of trust were introduced as Plaintiff's Exhibits 1 and 2 at the trial of this case.

On the first page of the deed of trust, there appears the following language:

"WHEREAS, Debtor desires to secure prompt payment of (a) the indebtedness described above according to its terms and any renewals or extensions thereof, (b) any additional and future advances with interest thereon which Secured Party may make to Debtor as provided in Paragraph 1, (c) any other indebtedness which Debtor may now or hereafter owe to Secured Party as provided in Paragraph 2, (d) any advances with interest which Secured Party may make to protect the property herein conveyed as provided in Paragraphs 3, 4, 5, and 6, and (e) the full, prompt and timely performance by Debtor of each and every covenant, agreement or obligation undertaken by Debtor as hereinafter set forth (all being herein referred to as the "indebtedness")."

On page 2 of the deed of trust, there appears this additional language: "2. This Deed of Trust shall also secure any and all other indebtedness of Debtor due to Secured Party with interest thereon as specified, or of any one of the Debtors should there be more than one, whether direct or contingent, primary or secondary, sole, joint or several, now existing or hereafter arising at any time before cancellation of this Deed of Trust. Such indebtedness may be evidenced by note, open account, overdraft, endorsement, guaranty or otherwise."

The disclosure statement applicable to this particular indebtedness contains the following language: "NOTICE: The Security Agreement or Deed of Trust will secure Future or other indebtedness and will cover After-Acquired Property."

The interpretation of the two paragraphs appearing in the Deed of Trust and the single paragraph in the Disclosure Statement constitutes the crux of this lawsuit.

The Court notes that the parties stipulated that the Defendants have advised the Plaintiff that said Defendants will tender to the Plaintiff a sum of money pursuant to Section 89-1-59, Mississippi Code of 1972, as amended, although the exact amount of the proposal is disputed, in order to prohib-

it the foreclosure of the collateral described in the aforementioned Deed of Trust.

The Court also notes that as to this particular indebtedness, as well as, the other four (4) indebtednesses owed by the Defendants to the Plaintiff, that the parties stipulated that all were in default at the time of the filing of the petition for relief, and continue to remain in default.

B. The Debtors executed a promissory note in favor of the Creditor, dated June 6, 1978, in the total sum of $15,858.00, including pre-calculated interest, payable in 120 monthly installments in the sum of $132.15, beginning on the 15th day of July, 1978. This promissory note was secured by rental property owned by the Debtors at 1282 Belfast, Greenville, Mississippi, being also described as Lot 4, Block 2 of the Pecan Park Addition to the City of Greenville. The promissory note, disclosure statement, and deed of trust were introduced as Plaintiff's Exhibits 4 and 5 at the trial of this case. The language in the deed of trust and the disclosure statement is identical to the language set out under Paragraph A. hereinabove. The Plaintiff foreclosed its security interest in the property described in this particular deed of trust, which will be more fully discussed in Paragraph C. hereinbelow.

C. The Debtors executed a promissory note in favor of the Creditor, dated December 9, 1981, in the total sum of $35,685.00, including pre-calculated interest, payable in 60 monthly installments in the sum of $594.75, beginning on February 1, 1982. This promissory note was secured by the identical collateral as that described in Paragraph B. hereinabove, being Lot 4, Block 2, Pecan Park Addition to the City of Greenville. The promissory note, disclosure statement, and deed of trust were introduced as Plaintiff's Exhibits 10 and 11 at the trial of this case. The language in the deed of trust is identical to that set out under Paragraph A. hereinabove, but the future advance or other indebtedness clause is omitted in the disclosure statement.

As set out hereinabove, the parties have stipulated that the Plaintiff foreclosed its security interest in the real property described as Lot 4, Block 2, Pecan Park Addition to the City of Greenville and credited the account of the Defendants with the proceeds of the foreclosure sale in the sum of $13,200.00. The parties further stipulated that by the application of the foreclosure sale proceeds, the Defendants' obligation set out in Paragraph B. hereinabove was discharged, and the balance of the proceeds were applied to the indebtedness discussed in this paragraph which was not fully discharged. The parties further stipulated that none of the three (3) deeds of trust have been satisfied or cancelled of public record; therefore, the balance of the indebtedness discussed in this paragraph constitutes a very material element of this litigation.

D. The Debtors executed a promissory note in favor of the Creditor, dated August 8, 1980, in the total sum of $8,955.72, which also included pre-calculated interest. This particular promissory note was secured by a 1972 International Truck which has been seized and foreclosed by the Plaintiff. The Plaintiff announced to the Court that it is not pursuing the alleged deficiency in this litigation resulting from the inadequacy of proceeds realized at the foreclosure sale. Consequently, there is no need to further discuss this particular indebtedness.

E. The Debtors executed a promissory note in favor of the Creditor, dated June 16, 1981, in the total sum of $14,238.72, including pre-calculated interest, payable in 48 monthly installments in the sum of $296.64, beginning on July 15, 1981. This promissory note was unsecured and along with the related disclosure statement was introduced as Plaintiff's Exhibit 13 at the trial of this case.

The Court notes that the parties have stipulated that the amount of the obligation owed pursuant to this particular promissory note to the Plaintiff is secured by the collateral described under Paragraph A. hereinabove, being Lot 105 of the Country Club Estates Addition to the City of Green-

ville. Consequently, as to this indebtedness, the only question is to ascertain the precise amount owed.

## II.

In view of the fact that there is no dispute that the indebtedness described in Paragraph IB. hereinabove, has not been paid in full, as well as, that the Plaintiff is not seeking to recover the foreclosure deficiency applicable to the indebtedness discussed in Paragraph ID. hereinabove, the first undertaking by this Court centers on the calculation of the outstanding balances related to the indebtednesses discussed in Paragraphs IA., IC., and IE. hereinabove. The Plaintiff elicited testimony and introduced into evidence the computer printouts applicable to the Debtors' accounts with the Plaintiff. In the absence of any evidence to contradict the testimony and documentary evidence, the Court hereby finds that the following amounts are owing by the Debtors to the Plaintiff, to-wit:

| Promissory Note | Balance from Testimony and Exhibits | Demand from Pleadings | Amount Allowed |
|---|---|---|---|
| A. | $26,319.22 (Ex. 3 & 7) | $26,319.22 | $26,319.22 |
| C. | 18,732.52 (Ex. 12) or 18,727.52 (Ex. 7) | 18,727.52 | 18,727.52 |
| E. | 8,209.60 (Ex. 14) or 8,184.60 (Ex. 7) | 8,164.60 | 8,164.60 |
| | | Total Amount Allowed | $53,211.34 |

Each of these debts is calculated effective February 23, 1983, the date the petition in bankruptcy was filed, and the computations exclude collection costs or attorneys fees.

## III.

■ That as to the Debtors' contention that the proceeds realized from the foreclosure sale of the Pecan Park Addition property, being $13,200.00, were totally inadequate and commercially unreasonable, the Court finds that the Plaintiff had the property appraised by a competent real estate appraiser prior to the foreclosure sale and purchased the property at the sale at the appraised valuation. There is no competent evidence before this Court to contradict the appraisal report offered into evidence by the Plaintiff; and because of such, the Court is compelled to accept the Plaintiff's appraisal as being completely fair. Therefore, the Court determines that the foreclosure sale was conducted in a commercially reasonable manner, and likewise, the credit of $13,200.00 to the Debtors' account will not be modified.

## IV.

■ The Debtors offered testimony through Floyd A. Oswalt that he did not read nor comprehend the express written language set forth in any of the three deeds of trust. The Plaintiff timely objected to this testimony as being in violation of the parol evidence rule, and the Court reserved ruling on the objection during the course of the trial. The Court hereby finds that even if the Plaintiff's objections were overruled, the testimony, in and of itself, is insufficient to warrant a modification of the written language contained in the deeds of trust and the two disclosure statements. There is no evidence of probative value to indicate mutual mistake, fraud, or duress; so consequently, this case now boils down to the singular issue as to whether the future advances clause or "dragnet clause" in the August 28, 1978, deed of trust secures the remaining balance of the December 9, 1981, indebtedness, which initially was legally collateralized by totally different property. In other words, since the parties have stipulated that the balance of the indebtedness discussed in Paragraph IE. is secured by the collateral described in Paragraph IA., the Court now must determine whether the balance of the indebtedness described in Paragraph IC., is also secured by the collateral described in the deed of trust discussed in Paragraph IA.

## CONCLUSIONS OF LAW

## V.

Initially there appears to be a sharp contradiction in Mississippi law. *Newton County Bank, Louin Branch Office v. Jones,* 299 So.2d 215 (Miss.1974), permitted a "dragnet clause", encumbering in one

deed of trust the homestead property of a husband and wife, to additionally secure a second indebtedness created solely by the husband which was also secured by entirely different property. To the apparent contrary, *Amos v. Lance*, 355 So.2d 84 (Miss. 1978), held that an unliquidated deficiency resulting from a foreclosure sale conducted pursuant to one deed of trust was not secured by property encumbered by another deed of trust containing a "dragnet clause". In *Amos*, the debtor executed a deed of trust, encumbering certain real property in Desoto County, Mississippi; this instrument contained a clear and unambiguous "dragnet clause". Subsequently, the debtor became secondarily liable on a corporate indebtedness in the sum of $60,000.00, which was secured by real property in Panola County, Mississippi. A foreclosure sale was conducted on the Panola County property, securing the corporate indebtedness, with sale proceeds being realized in the sum of $15,000.00. The lender commenced foreclosure proceedings on the first deed of trust, encumbering the Desoto County property, on the theory that this property because of the "dragnet clause" secured the debtor's other indebtedness, on which he was secondarily liable. The Mississippi Supreme Court upheld the lower court decision enjoining this foreclosure, but spoke primarily to the issue that the foreclosure deficiency had not been reduced to a liquidated claim or judgment in a court of proper jurisdiction. There is no discernable comment as to what the decision might have been concerning the efficacy of the "dragnet clause" had the foreclosure deficiency been appropriately reduced to a liquidated sum. This factor distinguishes the *Amos* case from the case now before this Court inasmuch as the claims of the Plaintiff Bank against the Oswalts have now been defined and are set forth hereinabove as liquidated amounts.

Because the *Amos* case contained no citations whatsoever, and the singular thrust of the opinion dealt with the issue of an unliquidated foreclosure deficiency, this Court is of the opinion that *Amos* does not overrule *Newton County Bank*. This is also consistent with subsequent rulings of the Mississippi Supreme Court, as discussed more fully hereinbelow.

The Court confirmed that "dragnet clauses" are enforceable in this State in a decision styled *Whiteway Finance Company, Inc. v. Green*, 434 So.2d 1351 (Miss.1983). This particular opinion specifically cited as authority *Newton County Bank*, as well as, *Holland v. Bank of Lucedale*, 204 So.2d 875 (Miss.1967); *Trapp for Use and Benefit, etc. v. Tidwell*, 418 So.2d 786 (Miss.1982); and *Walters v. M & M Bank of Ellisville*, 218 Miss. 777, 67 So.2d 714 (1953).

A decision rendered by United States District Judge Harold Cox in the United States District Court, Southern District of Mississippi, Western Division, Civil Action No. W83–0026(C), dated March 4, 1983, styled In the Matter of: Michael Joseph Fields, Bankrupt: Michael Joseph Fields (Plaintiff) v. First National Bank (Defendant), unreported, but apparently affirmed by the Fifth Circuit, unequivocally holds that a "dragnet clause" is valid and enforceable in securing other debts owed by a bankrupt to a lending institution which had also required and obtained other security instruments when entering into both prior and subsequent loan transactions with the bankrupt. Coincidentally, this decision reversed the United States Bankruptcy Judge who had decided that two of the five obligations were not encompassed by the "dragnet clause".

Judge Cox, in his opinion, states as follows, to-wit:

"It is suggested that these debtors did not understand and that this Bank did not take the trouble to single out this "dragnet" clause and explain its harsh provisions to these debtors......

In the absence of any fraud, or overreaching of any kind by this Bank, these debtors made their covenant with this Bank for their money accommodations, and cannot contend under the facts and circumstances that they do not owe this Bank under the proper application of the

words and phrases employed in this printed "dragnet" provision in this deed of trust, although these debtors were not interested enough in this solemn business transaction to even read or try to understand anything in the instrument which they did not understand, and under the circumstances the "dragnet" clause in this deed of trust is perfectly legal and perfectly binding on these debtors, even though they did not read and now contend that they do not, even now on reflection, understand those harsh provisions of this "dragnet" clause. This Court has no power or authority to make any exceptions for any debtors who now seek to establish that this "dragnet" clause, and this deed of trust is so harsh and so unreasonable as to be against the common law of Mississippi. That contention simply is untenable, and this Court is thus impelled to discharge its duty by construing and applying this "dragnet" clause in this deed of trust exactly as provided therein......

The First Natchez Bank on July 8, 1982, took an appeal to this Court from the judgment of the Bankruptcy Judge made on July 2, 1983, wherein the two notes marked Exhibit "1" and Exhibit "2" were adjudged by the Bankruptcy Judge to be unsecured by this deed of trust, although they were heretofore made by these same debtors to this same Bank with no fraud involved. Under the circumstances this Court is constrained to disagree with the Bankruptcy Judge in that respect, and adjudges as a fact that both of these notes marked Exhibit "1" and Exhibit "2" were and are secured by this deed of trust to this Bank under this "dragnet" clause. Likewise, I agree with the Bankruptcy Judge that the other notes mentioned in his Opinion were and are secured by that deed of trust. Accordingly, the judgment of the bankruptcy court is reversed and this Court affirmatively adjudges as a matter of law on this record that both of those notes appearing as Exhibit "1" and Exhibit "2" are secured by this deed of trust to this Bank......"

For the reasons stated hereinabove, this Court hereby finds that the balance of the indebtedness described in Paragraph IC., hereinabove, is also secured by the collateral described in the deed of trust discussed in Paragraph IA., which also secures the indebtedness described in Paragraph IA., as well as, the indebtedness discussed in Paragraph IE.

## VI.

In view of the fact that the real property described in Paragraph IA., hereinabove, is appraised at a value in excess of the total amount of the indebtednesses owed by the Debtors to the Plaintiff, the Plaintiff has demanded interest to be accrued on the indebtednesses from and after February 23, 1983, the date of the filing of the petition for relief in this cause. 11 U.S.C. Section 506(b) provides, inter alia, that to the extent that an allowed secured claim is secured by property the value of which is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided under the agreement under which such claim arose. Although there is no evidence before this Court to permit a decision concerning costs and/or attorney fees, this Code Section does permit the accrual of interest at the contract rate subsequent to the date of filing, not to exceed the valuation of the collateral, which in this case, the Court sets at $68,000.00, being the lesser amount contained in the Plaintiff's appraisal.

## VII.

The Court notes that the parties hereto have previously agreed to a consent order granting relief from the automatic stay of provisions of 11 U.S.C. Section 362, and although the Debtors have been officially discharged, the consent order will be entered by the Court contemporaneously herewith. In addition, a separate order will be entered by the Court consistent with the findings of this Opinion.